_____

No. 95-2416
_____

Frank O. Mapes,                          *
                                         *
          Appellant,                     *
                                         *   Appeal from the United States
     v.                                  *   District Court for the
                                         *   Western District of Missouri.
Shirley S. Chater, Commissioner          *
of the Social Security                   *
Administration,                          *
                                         *
          Appellee.                      *
_____

Submitted:  January 11, 1996

Filed:  April 29, 1996
_____

Before  BEAM and MORRIS  SHEPPARD  ARNOLD, Circuit Judges,  and  JONES,*
     District Judge.
_____

BEAM, Circuit Judge.

     Frank O. Mapes appeals the district court's[1] order affirming the
Social Security Commissioner's denial of his application for disability
insurance benefits.  We affirm.

I. BACKGROUND

     Mapes applied for disability insurance benefits under Title II of the
Social Security Act, 42 U.S.C. § 401 et. seq., on October 23, 1991.  He
alleged a disability onset date of January 1, 1986. The Social Security
Commissioner (Commissioner) determined that

---

     *The HONORABLE JOHN B. JONES, United States District
     Judge  for  the  District  of  South  Dakota, sitting  by
     designation.

     [1]The Honorable Dean Whipple, United States District Judge for
the Western District of Missouri.

Mapes met disability insured status requirements through September 30, 1990.[2] After Mapes's application was denied initially and on reconsideration, he requested and was granted a hearing before an administrative law judge (ALJ). The ALJ found that Mapes was not disabled on or before September 30, 1990, and therefore denied Mapes's application. The Appeals Council denied review, and Mapes filed this action in district court. Each party then moved for summary judgment. The district court concluded that substantial evidence supported the ALJ's decision, and therefore granted the Commissioner's motion. Mapes now appeals.

At the time of the ALJ's decision, Mapes was 42 years old. He has a high school education and has worked as a coal miner, machinist, window assembler, and kitchen steward. His most recent work consists of odd jobs, including lawn and garden work.

Mapes complains of lower back and leg pain and of rheumatoid arthritis in his hands and joints. He also suffers from a seizure disorder as a result of a fall he suffered in 1983, but his seizures are now infrequent and controlled by medication. In addition to these physical impairments, Mapes alleges anxiety, depression, and memory loss. He acknowledges a long history of alcohol abuse, but he testified at the hearing that he had given up hard liquor and only occasionally drinks beer, in part because of the alcohol's effects when mixed with his prescription medication. Mapes takes dilantin for his seizure disorder,[3] ansaid for back

---

[2]In order to be eligible for disability insurance benefits, a claimant must establish the existence of a disability on or before the date on which his or her insured status expires. 20 C.F.R. § 404.131. The Commissioner calculates a claimant's insured status pursuant to a formula set forth at 42 U.S.C. §§ 416(i)(3)(B) and 423(c)(1)(B) and corresponding regulations.

[3]Dilantin is an antiseizure medication used for the control of grand mal and temporal lobe seizures. Physician's Desk Reference 1832 (49th ed. 1995).

pain and arthritis,[4] librium for anxiety,[5] and trazodone for depression.[6]

In evaluating Mapes's claim, the ALJ applied the familiar five-step analysis prescribed in the Social Security regulations. 20 C.F.R. § 404.1520(a)-(f).[7] The ALJ determined that although Mapes's impairments were severe, none of them met or equalled a listed impairment. Relying in part on the testimony of a vocational expert, the ALJ then found that, although Mapes was not able to return to his past relevant work, he possessed the residual functional capacity to engage in a full range of light, unskilled work existing in significant numbers in the national economy.

The overriding issue in this case is whether the ALJ properly considered Mapes's mental impairments in deciding that Mapes was

---

[4]Ansaid tablets contain a nonsteroidal anti-inflammatory agent and are prescribed for rheumatoid arthritis and osteoarthritis. Physician's Desk Reference, supra note 3, at 2520-21.

[5]Librium is a drug prescribed for management of anxiety disorders or for the short-term relief of symptoms of anxiety. Physician's Desk Reference, supra note 3, at 2073.

[6]Trazodone is a drug prescribed for treatment of depression with or without prominent anxiety. Physician's Desk Reference, supra note 3, at 520.

[7]In this sequential analysis, the ALJ must first determine whether the applicant is engaged in "substantial gainful activity" as defined by the regulations. 20 C.F.R. § 404.1520(b). If the answer is yes, the applicant is not disabled and the analysis need go no further; if the answer is no, the ALJ must determine whether the claimant has a severe impairment that significantly limits his or her ability to work. 20 C.F.R. § 404.1520(c). If a severe impairment is present, the ALJ then considers whether the claimant's impairment meets or equals one of the impairments listed in Appendix 1 to Part 404 of the Social Security regulations. 20 C.F.R. § 404.1520(d). If so, the claimant is presumptively disabled. Id. If the claimant's impairments do not meet or equal the listings, the ALJ must determine whether, despite those impairments, the claimant can return to past relevant work or, if not, whether the claimant can perform other jobs in the national economy. 20 C.F.R. §§ 404.1520(e) & 404.1520(f).

not disabled.  Mapes contends that the ALJ erred in failing to set forth Mapes's mental impairments and related functional limitations in the hypothetical question he posed to the vocational expert at Mapes's hearing. He further argues that the ALJ did not properly consider Mapes's physical and mental impairments in combination so as to determine their cumulative effects on Mapes's residual functional capacity to work.

## II.  DISCUSSION

Our task on review is limited to a determination of whether the Commissioner's decision is supported by substantial evidence in the record as a whole.  See, e.g., Delrosa v. Sullivan, 922 F.2d 480, 484 (8th Cir. 1991).   In making this determination, we consider not only evidence supporting the Commissioner's decision but evidence which fairly detracts from its weight.  Id.  It is not our task, however, to review the evidence and make an independent decision.  If, after review, we find it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, we must affirm the denial of benefits.  Siemers v. Shalala, 47 F.3d 299, 301 (8th Cir. 1995).

### A.    The Hypothetical Question

Mapes first alleges that the ALJ improperly formulated the hypothetical question to the vocational expert.  Specifically, Mapes notes that in completing the Psychiatric Review Technique Form[8] (PRTF) the ALJ found that Mapes exhibited medically

---

[8]The Psychiatric Review Technique Form is a standard document which generally must be completed when a claimant alleges a mental impairment.  See Pratt v. Sullivan, 956 F.2d 830 (8th Cir. 1992) (per curiam).  The PRTF mirrors the listings for mental impairments set forth in the Social Security regulations. See 20 C.F.R. pt. 404, subpt. P, app. 1, pt. A § 12.00.  These listings usually consist of two parts: (1) a set of clinical findings (paragraph A criteria), which establish whether a medically-determinable mental impairment exists; and (2) a set of functional restrictions (paragraph B criteria), which detail the impairment's effect on four areas of function deemed essential to work. See generally Pratt, 956 F.2d at 834-35 & nn.7-9.

determinable signs of depression (Listing 12.04), anxiety (Listing 12.06), and substance addiction (Listing 12.09).  The ALJ then rated the degree of functional loss resulting from these impairments and determined that Mapes: (1) has moderate difficulties in maintaining social functioning, (2) often has deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner, and (3) has once or twice had episodes of deterioration or decompensation in work or work-like settings causing him to withdraw from that situation or to experience exacerbation of signs and symptoms.  The ALJ did not, however, mention these mental impairments or functional losses in his hypothetical question to the vocational expert.  Mapes argues that these omissions were error, and therefore the expert's answer to the hypothetical question cannot constitute substantial evidence supporting the ALJ's decision.

In order to properly address Mapes's concerns, it is necessary to examine the PRTF in context with the full extent of the ALJ's findings. In so doing, we discern that critical qualifications were placed on the findings detailed in the PRTF.  Although Mapes correctly observes that the PRTF records Mapes's depression, anxiety, and substance addiction, he overlooks the ALJ's written decision in which the ALJ concludes that these mental conditions are largely the outward manifestations of Mapes's substance abuse rather than impairments existing independently of Mapes's use of

alcohol.[9]  Similarly, the ALJ specifically found that Mapes's functional losses were present only when Mapes was drinking.

The ALJ's determination that Mapes's mental impairments and resulting functional limitations were the products of his alcohol abuse is not without significance, for although we have held that an ALJ's hypothetical question must include all of the claimant's impairments found credible by the ALJ, Chamberlain v. Shalala, 47 F.3d 1489, 1495 (8th Cir. 1995), we have also held that the mere presence of alcoholism is not necessarily disabling.[10]  See, e.g., Cruse v. Bowen, 867 F.2d 1183, 1186 (8th Cir. 1989).  In fact, the burden for establishing disability due to alcoholism is a high one, requiring the claimant to show:  "(1) that he has lost self-control to the point of being `impotent to seek and use means of rehabilitation,' and (2) that his disability is encompassed by the Act." Metcalf v. Heckler, 800 F.2d 793, 796 (8th Cir. 1986) (quoting Adams v. Weinberger, 548 F.2d 239, 245 (8th Cir. 1977)).  In each case, the claimant's capacity to control his use of alcohol must be considered in the context of his ability to engage in substantial gainful activity.  Lubinski v. Sullivan, 952 F.2d 214, 216 (8th Cir. 1991).  Guided by these principles, we find that we

---

[9]The PRTF section corresponding to Listing 12.09 is a reference listing which directs the ALJ to analyze the secondary physical or mental effects of substance abuse.  Thus, the ALJ's completion of that section indicates that the ALJ considered the anxiety and depression consequences of alcohol use.  In addition, the ALJ stated in his decision that Mapes's anxiety and depression are "coupled with claimant's alcohol abuse," and that Mapes's alcohol abuse "results in a diagnosis of an affective disorder and of an anxiety disorder." Tr. at 19, 24.

[10]We recognize that recent amendments to the Social Security Act signed into law on March 29, 1996, eliminate alcoholism or drug addiction as a basis for obtaining disability insurance benefits. Contract with America Advancement Act of 1996, Pub. L. No. 104-121, 110 Stat. 847 (amending 42 U.S.C. § 423(d)(2)).  Because we find that the ALJ correctly denied benefits under the standards in place at the time of Mapes's hearing, we need not address the effect of the new amendments on Mapes's application.

may properly uphold the ALJ's omission of the mental impairments and functional limitations in his question to the vocational expert if substantial evidence supports the ALJ's finding that Mapes's alcoholism was controllable and, when controlled, Mapes's mental impairments and functional limitations were not present.

After carefully reviewing the testimony and the medical evidence, we find substantial evidence supporting these findings.[11]  The record shows that Mapes received inpatient and outpatient treatment for alcohol dependence at the Bill Willis Community Health Center (the Center) from June 1990 to June 1991.[12]  Treatment notes from the Center indicate that Mapes was aware of the need to confront his alcohol problem and to take steps to resolve it.  To that end, Mapes participated in group therapy and attended regular meetings with his physicians at the Center.  Although the records indicate that Mapes's progress was difficult, Mapes nevertheless remained sober for long periods of time.

This evidence showing Mapes's ability to control his alcoholism is strengthened when viewed in light of his capacity to engage in substantial gainful activity.  Although Mapes worked only intermittently during the relevant time period, there is no indication in the record that alcohol abuse was the cause of his work interruptions.  Indeed, Mapes has consistently maintained that he became unable to work because of his various _physical_ impairments.  Therefore, while we do not deny that Mapes had a drinking problem during the period at issue, we conclude that

---

[11]A finding that Mapes's alcohol intake was within his voluntary control is clearly implicit in the decision.  Moreover, in a case involving substance abuse, the claimant bears the burden of establishing lack of control.  Here, we find no evidence that Mapes lacked the ability to curb his use of the substance.

[12]With one exception not relevant to these issues, the records from the Center are the only records which cover periods prior to the date Mapes's insured status expired.

Mapes's alcohol problem was controllable and did not preclude substantial gainful activity.  See Starr v. Sullivan, 981 F.2d 1006, 1008 (8th Cir. 1992).

We also find substantial evidence supporting the ALJ's determination that Mapes's anxiety and depression were generally present only when Mapes was drinking.  Several of the treatment notes from the Center reveal that although Mapes complained of anxiety and nervousness, he sought treatment out of the need to control his drinking.  Moreover, Mapes's anxiety appeared to lessen when he did not drink--a fact confirmed by Mapes at the hearing.  His depression followed this same course, with physicians indicating that it was controllable when Mapes stayed sober.  There is no indication that Mapes ever sought psychiatric treatment or counseling for these problems.  Although Mapes was eventually treated with prescription medications for both anxiety and depression, these medications were prescribed well after the time period at issue in this case and therefore do not significantly detract from the evidence supporting the ALJ's conclusions.  At best, this evidence demonstrates that Mapes's mental impairments may have worsened over time but nevertheless can be controlled by medication and therefore cannot be considered disabling.  See Stout v. Shalala, 988 F.2d 853, 855 (8th Cir. 1993).

Further evidence supports the ALJ's finding that the corresponding functional limitations listed on the PRTF were present only when Mapes was drinking.  As the ALJ noted, intelligence tests indicate that Mapes's intellectual functioning is in the average range.  A consultative psychological evaluation performed by Dr. Richard R. Christy corroborates the test results.  According to Dr. Christy, Mapes possesses a good ability to understand, remember, and carry out complex job instructions.  He is able to relate appropriately to coworkers and to maintain attention and concentration.  The strongest evidence to the contrary is contained in two reports appropriately discounted by

the ALJ as conclusory and dated significantly past Mapes's insured period. Accordingly, there is substantial evidence supporting the ALJ's conclusion that Mapes's functional limitations were simply side effects of his drinking problem, at least during the period before Mapes's insured status expired.

In summary, substantial evidence supports the ALJ's determination that Mapes's mental impairments and functional limitations were alcohol-related, and that Mapes's alcohol problem was within his control. Under these circumstances, the ALJ did not err in omitting the findings on the PRTF when he formulated the hypothetical question to the vocational expert.

## B.    Residual Functional Capacity

Mapes also argues that the ALJ failed to properly consider his physical and mental impairments in combination in assessing his residual functional capacity to work. As Mapes correctly points out, our cases require an ALJ to consider a claimant's impairments "in combination and not fragmentize them in evaluating their effects." Delrosa, 922 F.2d at 484. In addition, when mental impairments are alleged, an ALJ must determine whether those nonexertional impairments further limit the exertional tasks the claimant is deemed capable of handling. Tucker v. Heckler, 776 F.2d 793 (8th Cir. 1985). Mapes contends that the ALJ ignored Mapes's mental impairments in determining Mapes's residual functional capacity.

This contention lacks merit. The ALJ's opinion contains a thorough discussion of Mapes's physical impairments, mental impairments, and complaints of pain. The ALJ determined that Mapes's mental impairments did not restrict his residual functional capacity below the level of light exertional activity because they did not affect Mapes's abilities when his alcohol intake was

controlled. As explained above, substantial evidence in the record as a whole supports this finding.

## III. CONCLUSION

We find substantial evidence supporting the ALJ's determination that Mapes is not disabled. Accordingly, the judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.