**Kristi HELMS for Jessica L. DANIELS, Plaintiff,**

v.

**Kenneth S. APFEL,[1] Commissioner of Social Security, Defendant.**

No. 3–97–CV–10158.

United States District Court, S.D. Iowa, Davenport Division.

April 2, 1998.

---

1. Kenneth S. Apfel was sworn in as Commissioner of Social Security on September 29, 1997. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Kenneth S. Apfel is hereby substituted for John J. Callahan as the defendant in this suit.

John A. Bowman, Bowman & Depree, Davenport, IA, for plaintiff.

Gary Hayward, Assistant U.S. Attorney, Des Moines, IA, for defendant.

## ORDER

LONGSTAFF, District Judge.

Plaintiff seeks review[2] of the Commissioner of Health and Human Services' decision denying child's Supplemental Security Income benefits ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381 *et seq.* Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), this Court may review the final decision of the Commissioner.

## I. PROCEDURAL HISTORY

Plaintiff Kristi Helms protectively filed for SSI on November 10, 1993, on behalf of her minor daughter Jessica Daniels. Helms alleged Daniels was disabled since January 29, 1984. She was denied benefits and a reconsideration of that decision. A hearing was held before an administrative law judge ("ALJ") on August 11, 1995, and in an October 27, 1995 written decision, the ALJ denied plaintiff's application. On June 24, 1997, the Appeals Council of the Social Security Administration denied plaintiff's request for review. The decision of the ALJ thus stands as the final decision of the Commissioner. This action for judicial review commenced August 29, 1997.

## II. FINDINGS OF THE COMMISSIONER

The ALJ found the medical evidence to establish that plaintiff suffers from: "attention deficit hyperactivity disorder and a mild learning disability" but that she "does not have an impairment or combination of impairments which is comparable in severity to an impairment which would make an adult disabled." Tr. 22.

The ALJ determined that the child's mother's testimony concerning her disability was not fully credible. Tr. 22. Furthermore, the ALJ determined that the child has a severe impairment which "has more than a minimal limitation on her ability to function independently, appropriately, and effectively in an age-appropriate manner." Tr. 22. The ALJ concluded "The child does not, however, have an impairment or combination of impairments which is comparable in severity to an impairment which would make an adult disabled." Tr. 22. The ALJ therefore concluded plaintiff was not disabled under the meaning of the Act. Tr. 22.

---

**2.** The Court notes the argument portion of plaintiff's memorandum is written in a "stream of consciousness" style of writing. This Court has previously directed counsel to divide briefs submitted to this Court "into distinct point headings and corresponding argument." *See Carlin v. Chater*, No. 3–95–CV–10026, (April 2, 1996) at 12 n. 2. Counsel's failure to comply with that direction is, to say the least, disappointing. If counsel fails to comply with the Court's requested format in the future, the briefs will be stricken from the record.

## III. APPLICABLE LAW AND DISCUSSION

### A. Legal Standard

A court must affirm the decision of the Commissioner if substantial evidence on the record as a whole supports the decision. 42 U.S.C. § 405(g). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support a conclusion.". *Johnson. v. Chater,* 108 F.3d 942, 943 (8th Cir.1997). A court may not reverse merely because substantial evidence would have supported an opposite decision. *Locher v. Sullivan,* 968 F.2d 725, 727 (8th Cir.1992). "If, after review, we find it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, we must affirm the denial of benefits." *Mapes v. Chater,* 82 F.3d 259, 260 (8th Cir.1996).

### B. Whether Plaintiff's Impairment Meets the Severity Level of any Listing

■ Initially, the Court notes two potential standards exist for evaluating whether claimant should receive benefits. When the ALJ issued a decision in this case, he evaluated whether Jessica Daniels suffered from any medically determinable physical or mental impairment of *comparable severity* to an impairment that would disable an adult. *See* Tr. 22 (emphasis added). Recently enacted legislation states a more stringent standard for determining whether a child is eligible for SSI:

An individual under the age of 18 shall be considered disabled for the purposes of this subchapter if that individual has a medically determinable physical or mental impairment, which results in *marked and severe functional limitations,* and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1383c(a)(3)(C)(i) (1997) (emphasis added); *see also Briggs v. Callahan,* 139 F.3d 606, 607 (8th Cir.1998) (noting the newly enacted standard is more stringent). The legislation is applicable to all claimants whose claims have not been subject to a final adjudication, *see* Pub.L. No. 104–193, § 211(d), including claims pending judicial review after exhausting administrative remedies. *See Briggs,* 139 F.3d 606, 607. Under either standard, claimant is not entitled to benefits.

Plaintiff argues her condition meets the listed impairments set forth at 20 C.F.R. Pt. 404, Subpt. P.App. 1, § 112.11 (Attention Deficit Hyperactivity Disorder). The regulation requires:

A. Medically documented findings of all three of the following:

1. *Marked* inattention; and

2. *Marked* impulsiveness; and

3. *Marked* hyperactivity;

AND

B. ... for children (age 3 to attainment of age 18), resulting in *at least two* of the appropriate age-group criteria in paragraph B2 of 112.02.

20 C.F.R. Pt. 404, Subpt. P.App. 1, § 112.11.

The ALJ agreed that "Jessica has been noted to have some cognitive delays and has been diagnosed with attention deficit hyperactivity disorder," Tr. 20, and that "Jessica's impairments are severe because there is more than a minimal impact on her ability to engage in age-appropriate activities." Tr. 19. Yet, the ALJ concluded "the record as a whole does not support Jessica's mother's conclusions as to the *severity* of her condition," Tr. 20, and "Jessica's condition does not meet or equal the severity of any impairment listed in Appendix 1, Subpart P, Regulations No. 4 (the Listing of Impairments)." Tr. 19.

Dr. Joseph Kehoe was Jessica's primary treating physician, and has observed Jessica is not disabled. *See, e.g.,* Tr. 188 ("... her mother reported ... that her behavior in school was good. Basically, her mother requested help in parenting skills and disciplinary approaches ... As far as Jessica's functional abilities are concerned, Jessica does not seem significantly limited in any functional area.") (January 27, 1993); Tr. 191 (observing Jessica's behavioral problems stem primarily from relationship with parents and their divorce, noting "I would not see Jessica as limited in any functional area and feel she is too young to determine any permanent disability.") (April 30, 1993); Tr. 198 ("Com-

menting on her functional abilities, we feel Jessica would be moderately limited in her cognitive development/functioning. However, we do not see her as significantly limited in any of the following areas: Communicative, motor, social, personal/behavior development/functioning, or in the area of concentration, persistence and pace.") (December 27, 1993); Tr. 219 ("I do not feel Jessica is significantly limited in any developmental or functional area, nor does she present any significant limitations with respect to her concentration, persistence, and pace.") (June 2, 1994). Discrepancies in Dr. Kehoe's evaluations and those of Jessica's teachers existed, and Jessica received a cognitive evaluation, by clinical and school psychologist Stephen Singley, to clear up some of the conflicting evaluations. *See* Tr. 204–07. The results indicated Jessica's intellectual functioning was within "the average range for her age." Tr. 206. Singley also noted:

> In terms of age-appropriate functioning in several separate domains.... Communication development appears reasonably normal, and Jessica does not display any obvious difficulty with either receptive or expressive language activities. There does seem a probable motor integration difficulty existent, and certainly Jessica's social and personal developments are problematic based on the impression of the oppositional-defiant disorder. Jessica's concentration and ability to pay attention to evaluation requirements was fine in this simplified atmosphere, but in a more complex environment such as a schoolroom she may have significant trouble.

Tr. 207 (February 7, 1994). Additionally, although teacher's reports indicate Jessica experienced problems at school, the later individualized education program ("IEP") reviews indicate Jessica made significant progress. Tr. 277–81. In reviewing this and additional information in the record, the ALJ determined the severity of the Jessica's impairments, pursuant to paragraph A, 20 C.F.R. Pt. 404, Subpt. P.App. 1, § 112.11, as well as the age-group criteria discussed in paragraph B. 20 C.F.R. Pt. 404, Subpt. P.App. 1, § 112.11. The record indicates the

ALJ evaluated all factors set forth in the listing of impairments. *See* Tr. 19–21.

Given the amount of evidence supporting the conclusion that Jessica's impairment is not severe enough to satisfy the criteria in the listed impairments, 20 C.F.R. Pt. 404, Subpt. P.App. 1, § 112.11, the Court cannot find that the ALJ erred. Substantial evidence on the record as a whole supports the ALJ's conclusion that Jessica's symptoms did not meet those required by the listed impairments.

### C. Whether the Appeals Council was Required to Audit the Hearing Tapes

Plaintiff argues the Appeals Council erroneously failed to review all the evidence. Specifically, plaintiff points to the Appeals Council's failure to review the audio tape of the hearing before the ALJ.[3]

■ This Court has power to enter judgment "upon the pleadings and transcript of the record." 42 U.S.C. § 405. The exhibits attached to plaintiff's brief, obtained through the Freedom of Information Act, are not part of the record and this Court has no authority to incorporate these documents into its review of this case.

■ Additionally, the Commissioner has complied with the requirement of providing "a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based." 42 U.S.C. § 1383(c)(1)(A). The ALJ's written decision satisfies this requirement, and plaintiff cites no additional authority requiring more.

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision is supported by substantial evidence in the record as a whole and is therefore AFFIRMED.

IT IS SO ORDERED.

---

**3.** Plaintiff obtained the Appeals Council's working papers in the instant case, available through the Freedom of Information Act. The records show the audio tape of the hearing was not in the Appeals Council file, indicating it had not been reviewed.