**Michael Keith JACKSON, Appellant,**

v.

**Kenneth S. APFEL, Commissioner of Social Security, Appellee.**

No. 98–1208.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 24, 1998.

Decided Dec. 11, 1998.

Michael D. Mayes, Springfield, MO, argued, for Appellant.

Mark S. Naggi, Social Security Administration (Charles M. Thomas, Asst. U.S. Atty., Kansas City, MO), for Appellee.

Before RICHARD S. ARNOLD, BEAM, and HANSEN, Circuit Judges.

HANSEN, Circuit Judge.

Michael K. Jackson appeals the district court's[1] affirmance of the Commissioner's denial of Social Security benefits. Although there has been an intervening change in the law, we conclude that the denial is consistent with that change. Thus, we affirm the decision of the district court. Also, subsequent to filing this appeal, Jackson filed a motion styled "Motion to Remand on the Basis of New and Material Evidence." We deny this motion.

## I.

Jackson applied for both disability insurance benefits and supplemental security income benefits (SSI) in May 1994. Jackson claimed to suffer from depression and physical limitations. Jackson's applications were denied initially and upon reconsideration. He made a timely request for a hearing which was held on September 22, 1995. On January 26, 1996, the Administrative Law Judge (ALJ), relying in part on the testimony of a vocational expert, concluded that although Jackson could not return to his past relevant work, there were other jobs that Jackson could perform. Thus, the ALJ concluded that Jackson was not disabled. The Appeals Council denied Jackson's request for

review. After exhausting his administrative remedies, Jackson filed the present action on January 27, 1997. The district court affirmed the administrative decision denying Jackson's requests for benefits.

Michael Jackson is currently 37 years old, has a tenth grade education and a lackluster work history. He readily admits to a long-term alcohol problem. X-rays reveal that Jackson suffers from degenerative disc disease and other orthopaedic problems. At various times during the course of his case he has admitted that his drinking was the source of both his poor work history and his depression. At other times, he blamed his inability to work on his physical problems. Jackson also has a history of cannabis abuse, although it is not entirely clear when or if he gave up smoking marijuana.

Doctor Michael Ball examined Jackson in late June 1994 at the referral of the Administration. According to Dr. Ball's report, Jackson showed no significant difficulties with squatting or walking, and Jackson could ambulate without any "gross difficulty." Range of motion tests indicated that Jackson retained relatively good mobility in his hips, lumbar spine, and shoulders. Finally, although Jackson complained of alcoholism and depression, Dr. Ball found "no evidence of a mental problem ... which would impact [Jackson's] ability to perform basic tasks and make decisions required for daily living." (Rec. at 195.)

Doctor Scott Jones performed a psychiatric evaluation of Jackson in August 1994, also at the request of the Administration. Jackson told Dr. Jones that he was depressed and that he had stopped drinking for about three or four months. At that time, Jackson also indicated that he continued to smoke marijuana daily. Dr. Jones concluded that although Jackson was depressed, he did not "manifest ... any gross evidence of brain dysfunction such that he could not be able to do simple tasks and carry them out effectively, if he could remain sober." (Rec. at 199, 200.)

---

1. The Honorable Russell G. Clark, United States District Judge for the Western District of Missouri.

Doctor Honeywell, Jackson's treating physician, saw Jackson at least twice during the Summer of 1995. Dr. Honeywell's Medical Source Statement (MSS) included the following conclusions: (1) Jackson could lift no more than five pounds; (2) Jackson could stand or walk with usual breaks for six hours; (3) Jackson could sit for six hours with usual breaks; (4) Jackson had unlimited ability to push and/or pull; and (5) Jackson could not climb, stoop, kneel, crouch, or crawl.

Jackson and Michael Wiseman, the vocational expert, testified at the hearing. Jackson testified that he had been sober for 18 months. When asked whether it was his drinking or physical problems that kept him from working, Jackson said it was the latter. In response to a question from his attorney, Jackson stated that he doubted he could bend over to pick up a five pound bag of sugar without help. In response to a question by the ALJ, however, Jackson stated he could lift "15 to 20 pounds maybe." (Rec. at 66.)

The ALJ posed three hypothetical questions to the vocational expert. Each hypothetical reflected a person having some combination or subset of the following characteristics:

(a) same age, education, and vocational experience as Jackson;

(b) exertional limitations as set out in Dr. Honeywell's MSS, including the five pound lifting limit;

(c) mental limitations in accordance with a Mental Residual Functional Capacity Assessment used in state agency proceedings; and

(d) one or two episodes of deterioration or decompensation at work.

With the first hypothetical, the ALJ asked the vocational expert to assume a person having characteristics (a) through (d). The vocational expert testified that such a person would be unable to work. The second hypothetical included only characteristics (a) and (b). The vocational expert testified that such an individual could perform sedentary work that existed in substantial numbers both regionally and nationally. The third hypothetical included assumption (a), but modified assumption (b) to include persons able to lift 15 to 20 pounds, as opposed to only five pounds. The vocational expert testified that such a person could perform the same jobs identified in response to the second hypothetical, and additional jobs such as a restaurant host.

The ALJ applied the familiar five-step approach in concluding that Jackson was not disabled. See 20 C.F.R. §§ 404.1520, 416.920 (1998). The ALJ adopted all of the findings in Dr. Honeywell's MSS except the five pound lifting limit. The ALJ concluded that Jackson could lift 15 to 20 pounds. The ALJ justified this departure on the basis of Jackson's testimony that he could possibly lift that amount, as well as Dr. Ball's examination (suggesting Jackson had decent mobility). The ALJ found that Jackson did not have a severe mental impairment and that he could control his alcohol consumption. The ALJ discounted Jackson's subjective complaints due to inconsistencies in the evidence as a whole.

## II.

Jackson raises four issues on appeal. First, Jackson argues that statutory and regulatory changes enacted subsequent to the hearing mandate a remand for consideration of Jackson's mental condition in view of these changes. Second, in a somewhat related issue, Jackson argues that it was improper for the ALJ to exclude Jackson's mental impairments from the second and third hypotheticals posed to the vocational expert. Third, Jackson contends that the ALJ erred by failing to consider the opinion of Dr. Honeywell—Jackson's treating physician—in its entirety. Finally, Jackson submits that the ALJ improperly discredited Jackson's testimony.

## A.

"Our review is limited to whether the Commissioner's denial of benefits is supported by substantial evidence in the record as a whole." *Terrell v. Apfel,* 147 F.3d 659, 661 (8th Cir.1998) (citations omitted). Substantial evidence exists if a reasonable mind would find such evidence adequate. *Id.* A

reviewing court "may not reverse merely because substantial evidence would [also support] an opposite decision." *Id.* (internal quotations and citations omitted).

### B.

Jackson argues that a proper application of 20 C.F.R. § 404.1535 (1998) mandates a finding of disability. We agree with Jackson that § 404.1535 applies to his case. We do not believe, however, that it mandates a finding of disability or requires a remand. Jackson further argues that the ALJ improperly excluded Jackson's mental limitations from the second and third hypotheticals posed to the vocational expert. For the reasons stated below, we disagree.

Subsequent to Jackson's filing for benefits, the President signed into law the Contract with America Advancement Act of 1996, Pub.L. No. 104–121, 110 Stat. 847 (relevant portions codified in scattered sections of 42 U.S.C.). Part of this Act amended the Social Security Act to eliminate benefits for disabilities due to alcoholism and/or drug abuse. *Id.* § 105, 110 Stat. at 852–55. While the retroactive effect of these amendments was initially uncertain, in 1997 Congress passed further amendments clearly indicating a desire that the changes apply retroactively to all nonfinal cases. *See* Technical Amendments Relating to Drug Addicts and Alcoholics, Balanced Budget Act of 1997, Pub.L. No. 105–33, §§ 5525, 5528, 111 Stat. 251, 624–25. Hence, the changes apply in this case.

■ The regulations implementing these changes are found at 20 C.F.R. § 404.1535.[2] Section 404.1535(a) recites a "contributing material factor" standard. The Administration is to determine whether an applicant's "drug addiction or alcoholism is a contributing factor material to the determination of disability." Subparagraph (b) states that the "key factor . . . is whether we would still find you disabled if you stopped using drugs or alcohol." The regulation spells out a test that focuses on what "physical and mental limitations . . . would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling." § 404.1535(b)(2). Thus, subparagraph (a) focuses primarily on causation while subparagraph (b) focuses on the remaining effects, independent of cause. At first blush these standards seem simple enough. We suspect, however, that they may prove difficult to apply when a claimant has not, in fact, stopped using drugs or alcohol. Fortunately, we do not face that problem in this case. Jackson testified that he was sober. And while the record is not completely clear on the issue of Jackson's marijuana abuse, we note that Jackson's motion to remand represents that he has abstained from the substance for ten years (despite his reported statement to Dr. Jones in 1994 that he continued to smoke marijuana daily).

The ALJ did not have the opportunity to apply the new regulations. Despite this, the Commissioner argues that the ALJ's decision may be affirmed based on the principles laid out in *Mapes v. Chater*, 82 F.3d 259 (8th Cir.1996). The facts of *Mapes* are similar to this case. In that case, our court affirmed the denial of benefits to an alcoholic where the ALJ concluded that the claimant's "functional losses were present only when [the claimant] was drinking." *Id.* at 262–63. This was a critical factor in the *Mapes* decision because it grouped the claimant's mental impairments into a single inquiry—whether the claimant's alcoholism caused the disability. *See id.* at 263. Under the *Mapes* standard, once a disability is linked to alcohol, the claimant must satisfy a two-prong test. First, he must demonstrate "that he has lost self-control to the point of being impotent to seek and use means of rehabilitation." *Id.* (internal quotations and citations omitted). Second, he must show "that his disability is encompassed by the Act." *Id.*

We recognize that the *Mapes* standard does not fully reflect the new regulations. That, however, does not mandate a remand, much less a reversal in this case. Simply stated, if substantial evidence supports a con-

---

**2.** There are actually two identical sets of regulations. Section 404.1535 applies to applications for disability benefits. Section 416.935 applies to SSI applications. Jackson argues only § 404.1535. Thus, we limit our discussion and citations to that section.

clusion that Jackson's mental impairments occurred only when he could not control his drinking (and remained nonsevere while he was sober), the only difference between a case such as *Mapes* and this case is that the ALJ need not perform the two-step *Mapes* test because the new regulations would lead to a finding of no disability.[3]

 In this case, the ALJ found that Jackson did not have a severe mental impairment and could control his consumption of alcohol. Thus, the ALJ found that when alcohol was removed from Jackson's life, his mental impairment was not severe. Substantial evidence supports this conclusion. Dr. Jones, who thought Jackson was depressed, based his conclusion on a belief that Jackson remained chemically dependent. Dr. Jones stated that Jackson would "be able to do simple tasks and carry them out effectively, if he could remain sober." (Rec. at 200.) In other words, Dr. Jones' findings comport with § 404.1535. Further, Dr. Ball found "no evidence of a mental problem ... which would impact [Jackson's] ability to perform basic tasks and make decisions required for daily living." (Rec. at 195.) Jackson himself testified that it was his physical condition, not his alcoholism that kept him from working. Finally, the vocational expert testified in response to the second hypothetical that a person having Jackson's physical limitations would be able to work. Thus, ample evidence supported the ALJ's conclusion that Jackson's mental limitations were nonsevere.

We conclude, therefore, that the ALJ's findings and conclusions are consistent with 20 C.F.R. § 404.1535. We further conclude that substantial evidence supports the determination that Jackson's mental limitations are nonsevere, and as such were properly excluded from the second and third hypothetical questions.

## C.

 Jackson also claims that the ALJ erred by failing to consider Dr. Honeywell's opinion in its entirety. This issue boils down to the difference between hypotheticals two

and three. Hypothetical two included the five pound lifting restriction from Dr. Honeywell's MSS. Hypothetical three substituted a 15 to 20 pound restriction. We find that substantial evidence, the claimant's credited testimony, supports the ALJ's decision as to the third hypothetical. In any event, the issue is moot because the vocational expert testified in response to the second hypothetical that a person having *all* of the physical limitations identified in Dr. Honeywell's MSS would not be disabled. Even if we conclude that the ALJ erred in eliminating the five pound limit, that error would not require a reversal.

## D.

 Finally, Jackson contends that the ALJ improperly discredited his subjective complaints. "An ALJ may discount a claimant's subjective complaints only if there are inconsistencies in the record as a whole." *Porch v. Chater*, 115 F.3d 567, 572 (8th Cir. 1997) (citing *Johnson v. Chater*, 108 F.3d 942, 947 (8th Cir.1997)).

 The record in this case contains more than its share of inconsistencies. A brief listing should suffice to illustrate this point. For example, Dr. Ball's report suggests a person with only minimal exertional difficulties. Dr. Honeywell's MSS paints an entirely different picture. Further, Jackson's own statements are inconsistent. At times he blamed his inability to work on his alcoholism and depression. At other times, he claimed that his physical limitations prevented him from working. In view of these inconsistencies, we think an ALJ could properly discredit Jackson's subjective complaints.

## III.

 After filing his notice of appeal in this case, Jackson filed a Motion to Remand on the Basis of New and Material Evidence. Jackson's new evidence consists of a Medical Source Statement–Mental and accompanying report of Dr. Frances Anderson. This evi-

---

3. Based on Congress's clear intent to eliminate Social Security payments for drug and alcohol induced disabilities, it would be incongruous indeed if a finding of no disability were affirmed on the *Mapes* standard, yet reversed on the new standards.

dence is based on an evaluation conducted in March 1998, twenty-two months after the ALJ rendered his decision. We deny the motion.

■ As Jackson concedes, in order to remand this case, the new evidence must be material, and there must be "good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C.A. § 405(g) (West Supp.1998). In order to be material, the evidence must relate to Jackson's condition on or before the date of the ALJ's decision. *See Williams v. Sullivan*, 905 F.2d 214, 216 (8th Cir.1990) (applying 20 C.F.R. § 404.970(b) to additional evidence submitted to the Appeals Council). Two aspects of Dr. Anderson's report arguably relate to Jackson's condition in 1995. First, Dr. Anderson considered Jackson's subjective statement that he had been depressed for five years. Second, Dr. Anderson reviewed Dr. Jones' 1994 report in reaching her conclusion. Dr. Jones' report, however, was available to the ALJ and was reflected in his decision; thus, Dr. Anderson's review of that report is not material. We also find Dr. Anderson's report immaterial because it is "not closely enough related in time to either the ALJ's decision or the Appeals Council's denial of review to warrant remanding the case for further consideration." *Goad v. Shalala*, 7 F.3d 1397, 1398 (8th Cir.1993) (per curiam) (concluding that reports submitted 20 months after the ALJ's decision were too late in time) (internal quotations and citations omitted).

## IV.

In summary, we hold that substantial evidence supports the ALJ's determination that Jackson is not disabled. We further hold that the ALJ's findings and conclusions are consistent with 20 C.F.R. § 404.1535. Hence, we decline to remand this case on the basis of intervening statutory and regulatory changes. Finally, we deny Jackson's motion to remand on the basis of new evidence. The judgment of the district court is affirmed.