# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-2888

_____

| | | |
|---|---|---|
| Sandra Gartman, | * | |
| | * | |
| Appellant, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | Eastern District of Arkansas |
| | * | |
| Kenneth S. Apfel, Commissioner, | * | |
| Social Security Administration, | * | [PUBLISHED] |
| | * | |
| Appellee. | * | |

_____

Submitted: May 12, 2000

Filed: August 11, 2000

_____

Before RICHARD S. ARNOLD, HANSEN, and BYE, Circuit Judges.

_____

BYE, Circuit Judge.

Sandra Gartman sought disability benefits from the Social Security Administration (SSA) when leg pain caused her to leave her factory job. The SSA denied her benefits, finding that she was not disabled. Because we conclude that the SSA did not have an opportunity to review all of the available evidence of Gartman's condition, we reverse and remand with instructions.

# BACKGROUND

Gartman was born in 1959. In her late teens, she suffered a serious motorcycle accident; her leg injuries required several surgeries and partial amputation. Gartman has received treatment for her leg injuries for the last twenty years, though her diet of treatment has increased steadily in the last five years. Between 1994 and 1997, Gartman's treating physician, Dr. Glen Dickson, evaluated Gartman on a monthly, if not weekly, basis. Dr. Dickson's ongoing evaluations reflect Gartman's slowly worsening leg condition.

Gartman experiences swelling in her lower leg. Dr. Dickson diagnosed Gartman with a condition known as "dependency." Because of scarring caused by the motorcycle accident injuries, blood does not flow out of Gartman's foot as easily as blood flows into her foot. Blood tends to pool in her foot causing swelling. The swelling is exacerbated if Gartman stands, walks, or engages in any behavior where her leg is not elevated. Gartman feels pain even when she sits and her leg droops below her. When Gartman sits and elevates her leg, however, return blood flow is improved, and Gartman can sometimes operate without the benefit of pain-relief medication.

For most of her adult life, Gartman worked in various factories, stamping tennis ball logos, manufacturing bug-killing devices, and operating machine grinders. In January 1996, when the swelling and pain in her leg became too great to bear, Gartman quit work at the Dana factory, where she had operated a machine grinder. Gartman then enrolled in classes at a state university. But Gartman's leg pain continued unabated.

Dr. Dickson completed a residual functional capacity questionnaire in which he assessed that Gartman could sit eight hours, stand and walk two hours, and work four hours in an eight-hour work day. Dr. Dickson subsequently revised his opinion in a December 23, 1997 letter:

Sandra Gartman was involved in a motorcycle accident in 1976 with incomplete amputation of her right leg. She is unable to perform her regular job duties due to chronic swelling in her leg as a result of massive scarring. Due to the swelling in her leg, she cannot stand or sit for prolonged periods of time and she periodically needs to elevate it during the day.

Dr. Dickson's revised evaluation makes clear that Gartman cannot work — even in a sitting, or sedentary, position — unless she is able to elevate her leg periodically.

Gartman underwent an independent medical evaluation from Dr. Terence P. Braden on February 22, 1996. Dr. Braden concluded,

> my final recommendations would be that Ms. Gartman is unable to participate in her current job environment which requires standing for any length of time. It would be in [her] best interest to obtain a sedentary position of a clerical nature where the majority of the day will be sitting and doing desk type work rather than standing and operating a machine.

Dr. Braden's evaluation conflicts somewhat with Dr. Dickson's revised evaluation. Dr. Braden does not discuss Gartman's need to elevate her leg, while Dr. Dickson predicates Gartman's capacity to work in a sedentary job on her opportunity to elevate her leg in the working environment. We note that Dr. Braden evaluated Gartman almost two years before Dr. Dickson tendered his revised prognosis. It is possible, perhaps even likely, that Gartman's condition worsened in the intervening period.

Gartman filed an application for disability benefits on March 8, 1996. The SSA denied her claim initially. Gartman then requested a hearing before an Administrative Law Judge (ALJ). A hearing was held on April 16, 1997; Gartman attended with her attorney. On July 24, 1997, the ALJ issued a decision, denying Gartman's claim.

The ALJ held that Gartman was not disabled because she was capable of returning to work at her tennis-ball stamping job at the Penn factory. The ALJ found that the job required her to stamp tennis balls with the Penn logo, inspect the balls, and package them. The ALJ noted that usually this type of work has performance requirements consistent with light work, see Dictionary of Occupational Titles, Vol. II, Section 920.687-125, but, "[n]evertheless, in her testimony the claimant conceded that, as she performed it, she actually sat for most of the day." Although Gartman described the job at the hearing as requiring frequent bending, and four hours of standing or walking per day, the ALJ's report did not explain what the inspecting and packaging aspects of the job required.

In reaching his ultimate conclusion, the ALJ lacked the benefit of Dr. Dickson's revised opinion, that Gartman required a working environment in which she could elevate her leg. Gartman appealed the ALJ's decision to the SSA's Appeals Council, where she submitted Dr. Dickson's revised opinion for the first time. The Council denied her appeal on April 22, 1998. She then brought suit in the district court arguing that the SSA's decision was not supported by substantial evidence. On May 6, 1999, the Magistrate Judge granted the SSA's motion for summary judgment, and, subsequently, denied Gartman's motion for post-judgment relief. See Fed. R. Civ. P. 60(b). This appeal followed.

## STANDARD OF REVIEW

We review decisions of the SSA using the same standard as the district court. See Cruse v. Bowen, 867 F.2d 1183, 1184 (8th Cir. 1989). By statute, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). We have stated that

> [w]e will uphold the Commissioner's determinations if they are supported
> by substantial evidence on the record as a whole. Substantial evidence is

relevant evidence which a reasonable mind would accept as adequate to support the Commissioner's conclusion. In assessing the substantiality of the evidence, we must consider evidence that detracts from the [Commissioner's] decision as well as evidence that supports it. We may not reverse the Commissioner merely because substantial evidence exists supporting a different outcome.

Black v. Apfel, 143 F.3d 383, 385 (8th Cir. 1998) (internal quotations and citations omitted).

We defer heavily to the findings of the SSA. "If, after review, we find it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, we must affirm the denial of benefits." Mapes v. Chater, 82 F.3d 259, 262 (8th Cir. 1996) (citing Siemers v. Shalala, 47 F.3d 299, 301 (8th Cir. 1995)); see Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 620 (1966).

## DISCUSSION

The only issue presented in this appeal is whether Gartman is "disabled" for purposes of the Social Security Act. The Act provides for the payment of benefits to persons who suffer from a physical or mental disability. See 42 U.S.C. § 423(a)(1)(D); Bowen v. Yuckert, 482 U.S. 137, 140 (1987). "Disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Secretary has promulgated regulations creating a five-step test to determine whether an adult claimant is disabled. The first two steps involve threshold determinations that the claimant is not presently working and has an impairment which is of the required duration and which significantly limits his ability to work. In the third step, the medical

evidence of the claimant's impairment is compared to a list of impairments presumed severe enough to preclude any gainful work. If the claimant's impairment matches or is "equal" to one of the listed impairments, he qualifies for benefits without further inquiry. If the claimant cannot qualify under the listings, the analysis proceeds to the fourth and fifth steps. At these steps, the inquiry is whether the claimant can do his own past work or any other work that exists in the national economy, in view of his age, education, and work experience. If the claimant cannot do his past work or other work, he qualifies for benefits.

Sullivan v. Zebley, 493 U.S. 521, 525-26 (1990) (internal citations omitted); see Yuckert, 482 U.S. at 140-42.

The ALJ found that Gartman satisfied the initial two steps of the inquiry; Gartman was not working and had not worked since January 1996, and her leg condition limited her ability to work. Moving to the third step, the ALJ concluded that Gartman's condition was not listed on the roster of impairments that automatically establishes disability. We leave each of these conclusions undisturbed for present purposes. We turn our focus to the ALJ's analysis of the fourth step — ability to resume past work.

The ALJ held that, "[a]fter considering all of the evidence, I conclude that the claimant is not disabled within the meaning of [the Social Security Act] because she can perform her past work as a tennis ball stamper and inspector." The ALJ determined that Gartman was able to perform sedentary work and, therefore, was able to return to her past work as a tennis ball stamper and inspector at the Penn company. The ALJ determined that the Penn job did not require the performance of work-related activities precluded by her exertional and non-exertional limitations. Finding that Gartman could resume her past work, the ALJ terminated his analysis at the fourth step and deemed Gartman not disabled.

Gartman claims that she would *not* be able to return to work at the Penn factory because she cannot perform even sedentary occupations unless she is permitted to elevate her leg periodically. Gartman also argues that, even if she could perform work at the sedentary exertional level, the Penn job requires work at the light exertional level.

The ALJ did not consider (because it had not yet been written) Dr. Dickson's revised opinion that Gartman could work only in jobs where she would be permitted to elevate her leg. As a result, we cannot determine, on the present record, whether the ALJ properly discounted Dr. Dickson's revised opinion. Dr. Dickson's revised opinion was first submitted to the Appeals Council following the ALJ's decision. It is unclear whether the Appeals Council considered the letter. The decision letter issued by the Council mentioned that it considered "the additional evidence also identified on the attached Order of the Appeals Council" but we are unable to discern whether Dr. Dickson's December 1997 letter is part of the "additional evidence" considered by the Council.

In similar circumstances, we have considered evidence submitted to the Appeals Council — though not to the ALJ — to be part of the administrative record. See Kitts v. Apfel, 204 F.3d 785, 786 (8th Cir. 2000) ("When the Appeals Council has considered new and material evidence and declined review, we must decide whether the ALJ's decision is supported by substantial evidence in the whole record, including the new evidence."); Mackey v. Shalala, 47 F.3d 951, 953 (8th Cir. 1995) (noting that the Eighth Circuit, unlike some other circuits, does consider "tardy evidence" in the "substantial evidence equation"). Dr. Dickson's opinion, if credited, might well persuade the ALJ that Gartman could not return to work at the Penn factory. We therefore remand to the district court with instructions to remand to the SSA.

On remand, the ALJ should weigh Dr. Dickson's medical opinion that Gartman requires a job where her leg may be elevated from time to time against the other medical evidence already in the record. In addition, the ALJ should compare

Gartman's workplace needs against the actual working environment at the Penn factory. Of course, "a treating physician's opinion should be accorded substantial weight." <u>Onstead v. Sullivan</u>, 962 F.2d 803, 805 (8th Cir. 1992). For this reason, we reverse and remand for further proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.