**Christopher A. RIBAR, Plaintiff,**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security, Defendant.**

**No. CIV. 3–01–CV–10065.**

United States District Court, S.D. Iowa, Davenport Division.

April 12, 2002.

John A. Bowman, Bowman & Depree, Davenport, IA, for Plaintiff.

William C. Purdy, United States Attorney, Des Moines, IA, for Defendant.

## ORDER

LONGSTAFF, Chief Judge.

Plaintiff seeks review of the Commissioner of Social Security's decision denying him disability insurance benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401 *et seq.*, and supplemental security income ("SSI") benefits under Title XVI of the Act, 42 U.S.C. §§ 1381 *et seq.* Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), this Court may review the final decision of the Commissioner.

## I. PROCEDURAL HISTORY

Christopher Ribar, age 37 on the date of the hearing, applied for disability insurance and SSI benefits on April 12, 1999, alleging disability since March 29, 1999.

His applications were denied initially and upon reconsideration. On September 18, 2000, following a hearing, an administrative law judge ("ALJ") determined plaintiff was not disabled under the meaning of the Act at any time through the date of his decision. On March 29, 2001, the Appeals Council of the Social Security Administration denied plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner. Plaintiff commenced this federal court action on May 25, 2001.

## II. FINDINGS OF THE COMMISSIONER

The ALJ found the medical evidence to establish that plaintiff has "major affective disorder; bipolar disorder; and substance abuse in remission," but that he does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4. Tr. 37. The ALJ further found that plaintiff's allegation of total disability was not credible. Tr. 37.

The ALJ determined that plaintiff has the residual functional capacity ("RFC") to work at all levels of physical exertion. Tr. 37. Due to plaintiff's mental impairments, however, the ALJ limited plaintiff "to performing unskilled tasks, which can be learned after a short demonstration or within 30 days." Tr. 37. The ALJ then found that plaintiff is able to return to his past relevant work as a window frame packager. Tr. 37. Accordingly, the ALJ concluded plaintiff was not under a "disability" as defined in the Social Security Act at any time through the date of his decision. Tr. 29.

## III. APPLICABLE LAW AND DISCUSSION

### A. Governing Law

A court must affirm the decision of the Commissioner if substantial evidence on the record as a whole supports the decision. 42 U.S.C. § 405(g). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support a conclusion." *Johnson v. Chater,* 108 F.3d 942, 943 (8th Cir.1997). A court may not reverse merely because substantial evidence would have supported an opposite decision. *Locher v. Sullivan,* 968 F.2d 725, 727 (8th Cir.1992). "If, after review, we find it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, we must affirm the denial of benefits." *Mapes v. Chater,* 82 F.3d 259, 260 (8th Cir.1996).

### B. Whether ALJ Erred in Evaluating Plaintiff's RFC

The Court notes plaintiff has set forth a number of different arguments in his memorandum. Ultimately, however, plaintiff's entitlement to benefits turns on whether the ALJ appropriately evaluated the opinions of Janet M. Drew, Ph.D., a psychologist who evaluated plaintiff in July 1999 when he began psychotherapy at Psychology Associates, Ltd., and Candice Kundart, a licensed social worker who treated plaintiff presumably under Dr. Drew's supervision.

Following an intake interview/evaluation performed July 1, 1999, Dr. Drew stated:

From the information obtained, it is quite evident that Christopher has attempted various jobs, but has been unsuccessful. He noted that generally he is able to remember and understand the instructions and can understand electrical work. However, the concern occurs in order to carry out the instructions according to the law. His ability to sustain his attention, concentration, and pace seems to vary in his emotional status in which his level of mania would result in a very high level of work per-

formance at a fast pace. However, if he is more depressed and withdrawn, he will be more likely to have difficulty concentrating and attending to the work. From the information obtained, it appears that during these manic states, he displays delinquent behaviors which result in termination of his employment or rehabilitation programs. Even within the past month, he has not been able to remain sober and free of delinquent acts.

Tr. 279. Dr. Drew then assigned a Global Assessment of Functioning ("GAF") Scale score of 30–40. Tr. 280.[1]

In a letter written to plaintiff's former counsel on or around April 10, 2000, Ms. Kundert indicated that plaintiff had begun psychotherapy with her on July 1, 1999, and continued to be under her care through the date of the letter. Tr. 306. She then opined:

His severe mood swings, chronic hopelessness, and depression, as well as the panic attacks continue to be a daily challenge for him. Several times, Christopher has attempted working. He becomes easily fatigued and very vulnerable. At this time, due to his physical and mental conditions, I do not believe Christopher is able to work. His conditions are extremely severe and chronic. He has not been able in the past to reach full remission without full interepisode recovery. Even under careful supervision and medication, his mood swings and depression tend to become extreme and require continual supervision and support. He is very quickly fatigued, needs to be on heavy doses of medication regularly, is very impulsive

and tends to make very poor and destructive decisions.

Tr. 307. She also emphasized: "Christopher's substance abuse has been extensive and he will continue to need treatment for that also. However, his substance abuse is a *secondary* diagnosis of his condition and not primary. The onset of Bi–Polar was well established in Christopher before the substance abuse." Tr. 308.

In his written decision denying benefits, the ALJ referenced Dr. Drew's July 8, 1999 report, but neither relied upon it in forming his RFC, nor attempted to discount her opinion. The ALJ's sole reference to Ms. Kundert's opinion was to state that "social workers are not an acceptable medical source for the purpose of establishing the existence of a medically diagnosed impairment, and since her opinions are inconsistent with the records as a whole." Tr. 36.

Rather, the ALJ appeared to base his RFC findings upon a consultative evaluation performed by Julian M. Burn, Ph.D. Tr. 286–88. After diagnosing plaintiff with major depressive disorder, polysubstance abuse, narcissistic personality disorder and adult antisocial behavior, Dr. Burn assigned a GAF scale score of 65. Tr. 288. According to the *Diagnostic and Statistical Manual of Mental Disorders ("DSM IV")*, a GAF score between 61 and 70 indicates some "mild" symptoms, but that the individual generally is functioning well. *DSM IV* 32 (4th ed.1994).

■ The ALJ's evaluation of the medical evidence is not supported by the evidence as a whole. Specifically, the ALJ erred in failing to explain his reasons for ignoring the opinion of Dr. Drew. Although

---

**1.** A GAF score of 21 to 30 indicates the individual exhibits behavior considerably influenced by delusions or hallucinations or serious impairment in communication or judgment or inability to function in almost all areas. *See Diagnostic and Statistical Manual of Mental Disorders ("DSM–IV")* 32 (4th ed.1994). A GAF score between 31 and 40 indicates some impairment in reality testing or communication or major impairment in several areas. *Id.*

Dr. Drew's opinion may not be entitled to the controlling weight afforded to a *treating* psychologist, because she personally examined plaintiff, at the very least her opinion warranted a comparison to that of Dr. Burn. *See* 20 C.F.R. §§ 404.1513, 416.913 (licensed psychologists considered to be acceptable medical sources for establishing "medically determinable impairment" under both Title II and Title XVI applications).

Dr. Burn does not dispute plaintiff's bipolar disorder, depression or antisocial behavior, and noted that plaintiff suffered from mood swings and psychotic behavior. Tr. 287. It is not clear to the Court how Dr. Burn came upon the GAF score of 65. In fact, Dr. Drew's opinion appears more consistent with the record as a whole than Dr. Burn's opinion. For example, Prabhaker Pisipati, M.D., who treated plaintiff in April 1999 for suicidal ideation and substance abuse, assigned a GAF score of 45–50.[2] Tr. 239. Similar to Ms. Kundert, Dr. Pisipati attributes plaintiff's drug abuse to his bipolar disorder. Tr. 239. In two follow-up examinations conducted on April 20, and May 13, 1999, Dr. Pisipati notes that plaintiff appears to be functioning better on the medication Depakote, but is depressed, and lacks interest and concentration. Tr. 249. This is consistent with Dr. Drew's statement that plaintiff's "ability to sustain his attention, concentration and pace seems to vary in his emotional status." Tr. 279. Despite these statements, however, the ALJ makes no allowances in his RFC findings for plaintiff's concentration level, or potential mood swings. Tr. 37.

With regard to the opinion of Ms. Kundert, the Court notes the opinions of social workers are not considered "acceptable medical sources" for purposes of determining whether a claimant suffers from a particular impairment. *See* 20 C.F.R. §§ 404.1513, 416.913 (outlining sources who can provide evidence to establish an impairment). Nevertheless, both applicable regulations expressly state that after considering evidence from "acceptable" medical sources for purposes of establishing an impairment, evaluators "may also use evidence from other sources [such as therapists] to show the severity of your impairment(s) and how it affects your ability to work …" 20 C.F.R. §§ 404.1513, 416.913. In short, although Ms. Kundert's may not have been useful in establishing plaintiff's bipolar impairment, the ALJ could have, and *should have* considered her opinion in establishing plaintiff's overall RFC. At the time of her letter, Ms. Kundert had been treating plaintiff on a regular basis for more than one year, which arguably places her in a better position to evaluate plaintiff's day-to-day condition than either Dr. Drew or Dr. Burn.

■ On remand, the ALJ is directed to reevaluate the opinions of Dr. Drew and Dr. Burn in light of the evidence as a whole. The ALJ also may choose to send written interrogatories to Ms. Kundert to determine the extent to which she has witnessed plaintiff's psychotic or erratic behavior. If the ALJ again chooses to disregard Ms. Kundert's opinions, he should explain his reasons for doing so.

### C. Plaintiff's Remaining Arguments

■ In light of the above disposition, there is no need to address plaintiff's remaining arguments. If the ALJ determines at step four of the sequential evaluation process that plaintiff is unable to return to his past relevant work,[3] he will

---

**2.** A GAF score of 41 to 50 indicates an individual has "serious symptoms" or "serious impairment in social, occupational, or school functioning." *See DSM–IV, supra* note 1, at 32.

**3.** In evaluating a claimant's disability status,

undoubtedly seek input at step five from a qualified vocational expert.

## IV. CONCLUSION

The Commissioner's decision is not supported by substantial evidence in the record as a whole. IT IS ORDERED that the decision of the Commissioner is **reversed** and the case is **remanded** for further proceedings consistent with this order. The Clerk of Court shall immediately enter judgment for plaintiff which triggers the running of the time in which to file an application for attorney's fees under 28 U.S.C. § 4212(d)(1)(B) (Equal Access to Justice Act). *See Shalala v. Schaefer,* 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993).

IT IS SO ORDERED.

the Commissioner follows a familiar, five-step sequential format: 1) whether the claimant is currently engaged in "substantial gainful activity"; 2) whether the claimant suffers from a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; 3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations; 4) whether the claimant has the RFC to perform his or her past relevant work; and 5) if the claimant cannot perform past relevant work, the burden shifts to the Commissioner to prove that there are a significant number of other jobs in the national economy that plaintiff can perform. *See, e.g., Cox v. Apfel,* 160 F.3d 1203, 1206 (8th Cir.1998) (outlining steps in five-step process).