**Dora ORRICK, Plaintiff–Appellant,**

v.

**Louis M. SULLIVAN, Secretary of Health and Human Services, Defendants–Appellees.**

No. 91–2436.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 10, 1992.

Decided June 3, 1992.

PER CURIAM.

Dora Orrick appeals the district court's[1] order affirming the decision of the Secretary of Health and Human Services to deny her disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 423. We agree with the district court that there is substantial evidence on the record as a whole to support the Secretary's decision. Accordingly, we affirm.

Plaintiff's claim for benefits was first presented to an Administrative Law Judge and it was disallowed. The Appeals Council denied the request for review making the ALJ's determination the final decision of the Secretary.

## I.

Plaintiff's first assertion of error on appeal is that the Secretary's decision is not supported by substantial evidence. Our review of the agency decision is therefore limited to the consideration of this assertion.

Plaintiff was born August 13, 1928. She was fifty-eight years old at the time of the decision of the ALJ. Plaintiff has a high school education and one-year of college. She worked as a barber-hairdresser for many years, but was unable to continue regular work after 1976 because of arthritis, hernia, nervousness, high blood pressure and ulcers. Between 1976 and 1987 plaintiff worked on and off and stopped working in January 1987. She never earned more than $2,000 per year as a barber from 1978 to 1986.

At the hearing before the ALJ, plaintiff testified she cut men's and women's hair and worked in pain every day for two-and-one-half years before January 1987. Her work required her to stand on her feet, get into every kind of position you can think of, lift a 200 pound man, use her arms and hands and do additional lifting when shaving a man.

Plaintiff also stated she was in bed nearly all day and never felt like doing any-

Dick Jarboe, argued, Walnut Ridge, Ark., for plaintiff-appellant.

Deborah L. Feustle, argued, Baltimore, Md. (Charles A. Banks, Donald A. Gonya, Randolph W. Gaines, A. George Lowe, Peter S. Krynski, on the brief), for defendants-appellees.

Before JOHN R. GIBSON, BOWMAN, Circuit Judges, and LIMBAUGH,* District Judge.

---

\* The HONORABLE STEPHEN N. LIMBAUGH, United States District Judge for the Eastern District of Missouri, sitting by designation.

1. The Honorable Stephen M. Reasoner, United States District Judge for the Western District of Arkansas.

thing. Sometimes she would wash dishes and rinse them the next day. Neighbors and friends helped her with her housework. She has trouble using her hands because of a pinched nerve in her elbow and she is nervous and depressed. Plaintiff states that she is no longer able to drive an automobile and sometimes is unable to fasten her shoes, fix her hair or lift household or cooking items.

A daughter-in-law of plaintiff and neighbors and friends testified in person before the ALJ or by written statement. In general, they concluded that plaintiff's condition worsened in 1987 so that she could not drive, cut hair, hold a job or do housework.

■ It appears uncontested that plaintiff's disability insured status expired December 31, 1978. Therefore, to qualify for Social Security disability benefits, she must show she was disabled before December 31, 1978. *Johnson v. Richardson,* 486 F.2d 1023, 1024 (8th Cir.1973); *Harapat v. Califano,* 598 F.2d 474, 475 (8th Cir.1979).

The medical evidence of Dr. Joe E. Hughes reveals that as of December 1, 1976, plaintiff had a duodenal ulcer, chronic low back pain, etiology undetermined, nervousness, all under control by medication. Although Dr. Hughes stated on December 1, 1976 that plaintiff "is not able to perform any meaningful gainful employment in regards to her limitations from the low back pain" these problems apparently did not preclude plaintiff from working as a barber as she continued to work until January 1987.

Dr. Ted Lancaster examined plaintiff at the same time as did Dr. Hughes. Dr. Lancaster concluded that plaintiff was not unemployable, but that she should avoid heavy lifting or prolonged physical activity.

Although plaintiff complained of low back pain before December 31, 1978, which according to the doctors was of a chronic nature, again, this did not appear to have prevented her from working. In fact, after quitting in January 1987, plaintiff worked for a brief period in March 1987.

There is, therefore, substantial evidence on the record as a whole to support the Secretary's decision that plaintiff was not disabled within the meaning of the act before December 31, 1978. Accordingly, she may not qualify for Social Security disability benefits.

■ Plaintiff's claim for supplemental security income (SSI) disability benefits under 42 U.S.C. § 1381–1383c (1991) was filed April 7, 1987. No significant medical complaints were made by plaintiff between 1978 and 1983. In October 1984, plaintiff was hospitalized for her ulcer problem and was treated for that as well as for a urinary tract infection, depression and menopausal syndrome.

From October 1984 to April 1987, plaintiff was treated for her ulcer, high blood pressure, back pain and depression. Medication controlled these problems. X-rays were taken randomly throughout the period, and revealed some arthritic changes. In April 1987, lumbar and skull films were negative. Dr. Lancaster, at the time, stated plaintiff's personal appearance remained good and he assumed she was still functioning as a barber.

On July 17, 1987 Dr. Lancaster referred plaintiff to Dr. B.J. Bakhtian for a neurological evaluation. Dr. Bakhtian found there was tenderness in the right ulnar nerve groove at the elbow. Range of motion in the neck was within normal limits. Cervical spine x-rays were within normal limits. His impression was plaintiff suffered neck and intrascapular pain. He eliminated cervical osteoarthritis and right ulnar nerve neuropathy.

At another visit on July 27, 1987, Dr. Bakhtian felt plaintiff's neurological condition was unchanged. She had an MRI which revealed very mild degenerative osteoarthropathy without any cord compression. Cervical spine x-rays were unremarkable. Plaintiff wished to be treated conservatively and physical therapy was recommended.

Dr. Randy D. Roberts examined plaintiff in late 1987. He stated in his report of November 25, 1987 that plaintiff suffered myofascitis. This is a muscular pain condition causing discomfort through her neck

and upper back. It is a chronic condition which can be exacerbated by very strenuous activity. It is generally improved with exercise, but is worse with lack of exercise. Myofascitis usually responds to medication. Dr. Roberts felt plaintiff would continue to have problems for an indefinite period but that she could manage clerical and less strenuous occupations.

The ALJ found that plaintiff has myofascitis, a duodenal ulcer and hypertension, the latter two of which are controlled by medicine. He also determined that plaintiff was not disabled because she retained the residual functional capacity to perform light work activity and has the residual functional capacity to perform the basic work activities of her past relevant work as a hairdresser.

In *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir.1992), we stated,

> Our review of the agency decision is limited to whether there is substantial evidence on the record as a whole to support the Secretary's decision. 42 U.S.C. § 405(g) (1988); *Russell v. Sullivan*, [950 F.2d 542, 544] No. 91–1459EM, slip op. at 3 (8th Cir. Dec. 2, 1991). This requires us to do more than merely parse the record for substantial evidence supporting the Secretary's decision. We also must consider evidence in the record that detracts from the weight of the decision. Substantial evidence is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion. Therefore, if it is possible to draw two inconsistent positions from the evidence and one of those positions represents the agency's findings, we must affirm the decision. *Cruse v. Bowen*, 867 F.2d 1183, 1184 (8th Cir.1989).

We believe reasonable minds might find there is substantial evidence supporting the finding that plaintiff has the residual functional capacity to perform the basic work activities of her past relevant work as a barber hairdresser. If she can perform this work, she is not disabled within the meaning of the act and the regulations. 20 CFR 404.1520(e) and 416.920(e).

Plaintiff testified she cut men's and women's hair and in so doing, was required to get into a variety of positions. She used her arms and hands, lifted a 200–pound man and did additional lifting when shaving.

Yet plaintiff could perform her job in general without doing the full range of assignments she mentioned. It is not required that she lift every 200–pound man to cut his hair. Most customers can gain access to the barber's chair on their own. If a particular customer requires the barber to assume a position difficult for plaintiff, surely other solutions can be found without concluding plaintiff simply cannot do the work. On the basis of the record, it does appear barbering is light work and can be accomplished by plaintiff even though she may not be able to do the full range of this type of work that she once did. There is little credible testimony to suggest plaintiff cannot use a comb, scissors, clippers and razors. Although standing is frequently required, many barbers use stools and sit while cutting someone's hair.

Plaintiff's ulcer and elevated blood pressure are controlled by medication. These problems do not prevent her from barbering. She has myofascitis. Yet the findings of Dr. Bakhtian do not suggest she is unable to do the general work required of a barber. Her cervical spine x-rays were negative. Range of motion in the neck was within normal limits. She did not suffer cervical osteoarthritis, but did have tenderness in her right ulnar nerve groove at the elbow. The MRI revealed plaintiff has very mild degenerative osteoarthropathy, but without any cord compression.

Dr. Roberts said plaintiff's pain can be exacerbated by very strenuous activity. Exercise, such as physical therapy recommended by Dr. Bakhtian, can improve the condition of myofascitis. Without exercise, the condition worsens. Dr. Roberts felt plaintiff could manage clerical and less strenuous occupations.

Plaintiff urges reversal because the ALJ did not give enough credence to her subjective complaints. Plaintiff's testimony, sup-

ported in part by friends, suggests she is virtually an invalid.

 Obviously, the ALJ gave more weight to the medical record than to plaintiff's testimony. Certainly an ALJ may assess credibility and disbelieve a claimant's subjective complaints, especially if there are inconsistencies. *Underwood v. Bowen*, 807 F.2d 141, 143 (8th Cir.1986); *Tucker v. Heckler*, 776 F.2d 793, 796 (8th Cir.1985).

No one, including the ALJ, disputes that plaintiff has pain. She suffers from chronic myofascitis which is painful. The question is "whether she is fully credible when she claims that her back hurts so much that it prevents her from engaging in her prior work." *Baker v. Secretary of Health and Human Services*, 955 F.2d 552, 555 (8th Cir.1992).

The ALJ stated the question in similar language and then set out reasons for his evaluation of plaintiff's testimony. He detailed his findings as to subjective symptoms of pain as set out on pages 14 and 15 of the Record of Proceedings applying the criteria set out in *Polaski v. Heckler*, 751 F.2d 943 (8th Cir.1984).

We find the ALJ examined plaintiff's testimony and evidence and set out reasons for discrediting plaintiff's testimony as to disabling pain. His judgment should not be disturbed. *Browning v. Sullivan*, 958 F.2d 817, 821 (8th. Cir.1992).

## II.

 Plaintiff's next assertion of error is that the District Judge should have remanded the case for testimony by a vocational expert. Plaintiff argues that the ALJ should not have applied Medical–Vocational Guidelines because she has established non-exertional impairments. *Jones v. Bowen*, 841 F.2d 849, 850 (8th Cir.1988).

While we have adhered to the rule that Medical–Vocational Guidelines should not be applied in cases where non-exertional impairments have been established, we also have determined that "if non-exertional impairment does not diminish exertional capacity, a vocational expert need not be called." *Jones v. Bowen* at 850; *Tucker v. Heckler*, 776 F.2d 793, 795 (8th Cir.1985). For a more elaborate examination of the rule, *see Thompson v. Bowen*, 850 F.2d 346, 349 (8th Cir.1988).

Here the ALJ found, and we have agreed, that plaintiff's nonexertional problem of myofascitis and resultant pain did not prevent plaintiff from performing her past relevant work as a barber-hairdresser. Therefore, it is unnecessary to call in the services of a vocational expert.

Accordingly, we affirm the judgment of the district court denying benefits to plaintiff.