# United States Court of Appeals
## For The Eighth Circuit

————

No. 97-3000EM

————

| | | |
|---|---|---|
| Sydney Fenton, | * | |
| | * | |
| Appellant, | * | On Appeal from the United |
| | * | States District Court for the |
| vs. | * | Southern District of Iowa. |
| | * | |
| Kenneth S. Apfel, Commissioner of | * | |
| Social Security Administration,[1] | * | |
| | * | |
| Appellee. | * | |

————

Submitted: January 16, 1998

Filed: August 5, 1998

————

Before LOKEN, Circuit Judge, MURPHY, Circuit Judge, and WEBBER,[2] District Judge.

————

WEBBER, District Judge.

_____

[1]Kenneth S. Apfel has been appointed to serve as Commissioner of the Social Security Administration and is automatically substituted as appellee. See Fed.R.App.P.43(c)(1).

[2]The Honorable E. Richard Webber, United States District Judge for the Eastern District of Missouri, sitting by designation.

Sydney Fenton appeals from the District Court's[3] final judgment affirming the Social Security Administration's decision denying Social Security disability insurance benefits. We affirm.

## I.

Fenton applied for SSI disability benefits alleging that he was disabled due to a variety of impairments. The Social Security Administration denied the claim both initially and upon reconsideration. Fenton requested and received a hearing before an Administrative Law Judge (ALJ) after his application for Social Security Disability Benefits was denied on November 8, 1994.

When he applied for benefits on October 5, 1994, Fenton was a 49 year-old male with a general equivalency degree. After the hearing the ALJ concluded that: (1) Fenton had engaged in no substantial gainful activity since July 21, 1994, the same date that he claimed an inability to work; (2) he was unable to perform his past relevant work as a rural electrification lineman; (3) he is closely approaching advanced age; and (4) he does not have any acquired work skills which are transferable to the skilled or semi-skilled work functions of other work.

Medical evidence revealed that Fenton suffered from coronary artery disease, diabetes and peripheral neuropathy in his legs at the time of the filing of his application for disability benefits. He had been treated for angina, diabetic retinopathy, hypercholesterolemia and hypertension. He was examined for chest pains, in December 1991, and was referred for a treadmill test which was positive for inferior wall ischemia. He submitted to heart catheterization and coronary angioplasty. Medication was prescribed and upon review, notwithstanding his failure to follow the

---

[3]The Honorable Charles R. Wolle, United States District Judge for the Southern District of Iowa.

prescribed diet and use of chewing tobacco, the doctor concluded he was doing fairly well.

In December 1993, Fenton was treated for complaints of pain in his right leg and numbness in his toes on both feet at a time when poor control of diabetes was noted. Physical therapy for one month produced good results. Nerve conduction studies during the following February produced a diagnosis of peripheral neuropathy which was treated with medication. In July, 1994, his physicians reported he was doing well. One year later, Fenton's visual acuity was 20/30 +2 and 20/70. He was advised by his physician that if he would control his blood sugar and medicate for blood pressure, his condition would be under control. Both eyes were satisfactorily treated with laser technology.

In his findings, the ALJ, using the reports and the evidence adduced at the hearing, determined that plaintiff could perform light work, that jobs in that classification existed in substantial numbers in the national economy, and denied the claim for benefits. Fenton's main contention on appeal is that he could not do light work, and that consequently, he was entitled to the "grid" application for sedentary work, the next lower classification. Considering Fenton's age and lack of acquired work skills, if he should prevail in obtaining a classification of sedentary work, it is true that the "grid" would result in a disability rating.

The law imposes upon a disability claimant the burden to show "(1) that he has a medically determinable physical or mental impairment which will either last for at least twelve months or result in death, (2) that he is unable to engage in any substantial gainful activity, and (3) that this inability is a result of his impairment." McMillian v. Schweiker, 697 F.2d 215, 220 (8th Cir. 1983) (citation omitted). If the ALJ determines that the claimant cannot return to his past relevant work, the burden of proof shifts to

3

the Secretary[4] who then has the duty to show that the claimant is not disabled within the meaning of the Act. Talbott v. Bowen, 821 F.2d 511, 514 (8th Cir. 1987) (citation omitted).

The Secretary's two-fold burden is to first prove by medical evidence that the claimant has the requisite residual functional capacity (RFC), the claimant's physical capacity, to do other kinds of work. O'Leary v. Schweiker, 710 F.2d 1334, 1338 (8th Cir. 1983). Physical exertion requirements of work in the national economy, listed in terms of strength, are sedentary, light, medium, heavy and very heavy. Id. Subsection (b) of 20 C.F.R. § 404.1567 provides the following definition for light work:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b). Once the claimant's physical capabilities are established, the second aspect of the Secretary's burden is to demonstrate that jobs are available in the national economy, realistically suited to claimant's qualifications and capabilities. Id. (citations omitted). In determining availability of such jobs, claimant's exertional and nonexertional impairments, together with his age, education, and previous work experience, must be considered. Id.

The Medical-Vocational Guidelines, 20 C.F.R. Chapter III, Part 404, Subpart P, Appendix 2, §§ 202.00 - 204.00, may be used by the Secretary to meet the burden of showing availability of jobs in the national economy, which a claimant may perform, if claimant's characteristics identically match those contained in the Guidelines. Id. at 1339; see also Foreman v. Callahan, 122 F.3d 24, 25 (8th Cir. 1997)(for exertional

---

[4]References to "Secretary" in this opinion pre-date use of the term "Commissioner".

impairments, Secretary may carry burden by referring to the grids, which are fact-based generalizations about the availability of jobs for people of varying ages, educational backgrounds, and previous work experiences with differing degrees of exertional impairments). The Secretary is required to produce vocational expert testimony concerning availability of jobs which a person with a claimant's particular characteristics can perform, if his or her characteristics do not match those in the regulations, either because of suffered nonexertional impairments, or because he or she is precluded from performing a full range of a particular work classification, or for any other reason. O'Leary at 1339; see also Foreman at 26.

## II.

The scope of this Court's review is whether the decision of the Secretary in denying disability benefits is supported by substantial evidence on the record as a whole. 42 U.S.C. §405(g). See Lorenzen v. Chater, 71 F.3d 316, 318 (8th Cir. 1995). Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support the conclusion. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996) (citation omitted). We must consider both evidence that supports the Secretary's decision and that which detracts from it, but the denial of benefits shall not be overturned merely because substantial evidence exists in the record to support a contrary decision. Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)(citations omitted). When evaluating contradictory evidence, if two inconsistent positions are possible and one represents the Secretary's findings, this Court must affirm. Orrick v. Sullivan, 966 F.2d 368, 371 (8th Cir. 1992)(citation omitted).

The ALJ concluded that Fenton could perform jobs existing in the national economy in significant numbers which were classified as light work as well as a wide variety of unskilled sedentary positions. Since Fenton could not perform the full range of "light work" under those circumstances, it is clear that reliance upon the "grid" is not permitted. Talbott at 515; see also McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir. 1982)(reliance upon the "grid" is not appropriate unless the full range of light work

encompassed by the grid can be performed by the claimant), Frankl v. Shalala, 47 F.3d 935, 937 (8th Cir. 1995)(ALJ must consider vocational expert testimony in making a determination of disabled or not disabled where non-exertional impairments limit claimant's ability to perform full range of work in a particular category). The ALJ was required to rely upon the testimony of a vocational expert in making a finding of disabled or not disabled.

The vocational expert consulted the Dictionary of Occupational Titles (DOT) which classifies jobs that exist in the national economy by their exertional and skill requirements. The DOT defines office helper and Cashier II as light jobs. She found that with the limitation placed on Fenton for standing or walking, 80 to 90% of the light work jobs would be eliminated, however, he would be able to perform 10% of the light unskilled jobs remaining including that of Office Helper and Cashier II. However, she recognized that the Office Helper jobs require a good deal of sitting as well as standing throughout the work day. The expert identified the existence of 1,500 Office Helper jobs in the State of Iowa and 135,000 jobs nationally and 5,500 Cashier II jobs in the State of Iowa and 500,000 jobs nationally.

Fenton responds that the two-hour limit on standing and walking reduced his ability to do a full range of light work. However, the DOT, in its job definition, represents approximate maximum requirements for each position rather than the range. Jones v. Chater, 72 F.3d 81, 82 (8th Cir. 1995); Carlson v. Chater, 74 F.3d 869, 871 (8th Cir. 1996) (DOT definition of a particular job represents only "approximate maximum requirements of each position, rather than the range"). There is adequate evidentiary support in the record to support the district court's judgment that Fenton could perform light work and was not disabled.

The ALJ evaluated Fenton's subjective allegations including complaints of pain under Polaski v. Heckler, 751 F.2d 943, 948 (8th Cir. 1984). At the time of the filing of his application, he was to do no climbing on uneven ground. Daily activities included cooking, firing a woodstove, burning trash, reading, walking around the block,

and fishing. He visited friends and drove a vehicle. At the time of the hearing, he walked ten blocks, read, attended to laundry, washed dishes, gardened, cleaned the house, cared for his pets, and used a riding mower. He is unable to sit more than two to three hours at a time or stand for more than one to two hours at a time. He experiences pain below his knees which dissipates when sitting. Fenton described the pain in his legs in the following manner: "[w]ell, it just starts hurting down below my knees a ways and sometimes, like I say, sometimes it really hurts a lot and sometimes you just sit down and it goes away." On a scale of one to ten he said it was "probably on a four." He has had no reoccurrence of heart pain since 1991. He continues to take prescribed medications without side effects.

The ALJ concluded he was not precluded by discomfort from all work activity. No physician has restricted him from working. Coronary artery disease, diabetic retinopathy, peripheral neuropathy, high cholesterol, and hypertension are controlled by medication. Fenton has not always been obedient to medical advice or diet restrictions. Daily activities have not substantially changed since he filed his application. The ALJ found claimant not fully credible regarding claimed restrictions precluding all work activity.

Fenton next argues that the foundation for the vocational expert's opinion is flawed because the hypothetical question which she answered did not address his suffered impairments and restrictions. Specifically, he complains that the hypothetical question does not reflect lack of feeling below his knees and his limited vision.

> The point of the hypothetical question is to clearly present to the VE a set of limitations that mirror those of the claimant. While the hypothetical question must set forth all the claimant's impairments, it need not use specific diagnostic or symptomatic terms where other descriptive terms can adequately define the claimant's impairments.

Roe v. Chater, 92 F.3d 672, 676 (8th Cir. 1996)(citations omitted).

The hypothetical question was quite specific in probing Fenton's impairments by positing, "[t]hen if that same hypothetical person were limited to that 20 pounds occasionally, ten pounds frequently, has to avoid extremes of hot and cold and should avoid working at heights, around dangerous – and around dangerous machinery; and can only occasionally be using ladders, ramps, stairs, scaffolding and so forth; and only occasionally balancing, stooping, kneeling, crouching or crawling . . . ." The hypothetical question addressed to the vocational expert sufficiently encompassed the issue of Fenton's impairments to his legs.

Treating physician, Joel Wells, D.O., wrote to the Appeals Council advising that Fenton suffered from peripheral neuropathy with decreased vision restricting his sight so he could not read adequately, and work with small parts, or do tasks requiring hand/eye coordination. Treating physician, Christopher F. Biodi, also related to the Appeals Council that Fenton had limited vision. The Appeals Council entered into the record opinions of Dr. Joel Wells and Dr. Christopher F. Biodi.

Inclusion of visual problems in the hypothetical question is not indicated. Fenton's testimony concerning his visual acuity is inconsistent with the evidence of Wells and Biodi proffered three months after the ALJ ruled the case. Medical evidence generated after the ALJ decision is material only if it relates to a condition on or before the date of the ALJ decision. Thomas v. Sullivan, 928 F.2d 255, 260 (8th Cir. 1991)(citation omitted). The Appeals Council, after admitting this evidence, concluded it would not have changed the ALJ decision. The hypothetical question presented to the vocational expert was not infirm.

We conclude after reviewing the thorough record before the Court, including the decision by the ALJ and the written opinion of the District Court, it is clear that the decision of the ALJ is supported by substantial evidence.

III.

8

Accordingly, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.