**Hardy WESTERFIELD, Plaintiff,**

v.

**Kenneth S. APFEL, Commissioner of Social Security, Defendant.**

**No. 3–99–CV–90024.**

United States District Court,
S.D. Iowa,
Davenport Division.

Nov. 8, 1999.

Michael DePree, Davenport, IA, for plaintiff.

William C. Purdy, Asst. U.S. Atty., Des Moines, IA, for defendant.

### ORDER

PRATT, District Judge.

Plaintiff, Hardy Westerfield, filed a Complaint in this Court on February 11, 1999, seeking review of the Commissioner's decision to deny his claim for Social

Security benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq*. This Court may review a final decision by the Commissioner. 42 U.S.C. § 405(g). For the reasons set out herein, the decision of the Commissioner is re-versed.

Plaintiff filed his application for benefits on April 21, 1992. Tr. at 88–91. After the application was denied initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge. A hearing was held before Administrative Law Judge Gary L. Vanderhoof on August 26, 1993. Tr. at 50–58. Judge Vanderhoof issued a Notice of Decision—Fully Favorable on September 21, 1993. Tr. at 231–43. Among the severe impairments found by Judge Vanderhoof was "substance abuse addiction." Tr. at 237.

In March, 1996, Congressionally enacted changes to the Social Security Act prohibited payment of benefits where alcohol or drug dependence is a contributing factor material to a finding of disability. *See* Contract with America Advancement Act of 1996, Pub.L. No. 104–121, 110 Stat. 847 (relevant portions codified in scattered sections of 42 U.S.C.). Thus, Plaintiff's benefits were scheduled to cease on January 1, 1997. Plaintiff requested reconsideration of that determination, and he requested a "face-to-face evidentiary hearing". Tr. at 330. A hearing was scheduled November 14, 1996. Tr. at 353. Plaintiff failed to attend his hearing. Tr. at 357. Plaintiff's request for reconsideration, therefore, was denied. Tr. at 359–71. An appointment was made for Plaintiff's to undergo a psychological evaluation on September 24, 1996. Tr. at 386. Plaintiff was a "no show". Tr. at 385. An appointment was made for Plaintiff to undergo a physical examination on September 10, 1996. Tr. at 389. Plaintiff was a "no show" Tr. at 388. Plaintiff also failed to show for a comprehensive internal examination with Arthur B. Searle, M.D. Tr. at 392. A second attempt was made to schedule a psychological evaluation, but Plaintiff failed to attend. Tr. at 393. After Plaintiff's request for reconsideration was de-nied, he requested a hearing before an Administrative Law Judge. Plaintiff appeared at a hearing in front of Administrative Law Judge Thomas M. Donahue (ALJ) on July 2, 1997. Tr. at 57–77. The ALJ issued a Notice of Decision—Unfavorable on September 22, 1997. That decision was affirmed by the Appeals Council on January 29, 1999. Tr. at 7–9. The Complaint in this Court followed.

Documents from the Iowa Medical and Classification Center (Tr. at 170–86) indicate that Plaintiff was serving a two year sentence for theft (Tr. at 176) effective January 8, 1991. Tr. at 178. Under the heading "Social History", the following is written:

> Mr. Westerfield was born in Mississippi but essentially raised in Davenport, Iowa. He dropped out of school in the ninth grade and does not have a GED. As a juvenile he was placed at the Eldora ITBS. He has never been married but has been involved in a relationship since 1978 and they have two children whom reside with their mother. After his release from prison Hardy returned to the Davenport area to live. His most recent employment has been with Midwest Janitorial in that city. He reports that he is in good health and has no medical concerns. His psychiatric history is negative. Mr. Westerfield does have a history of some substance abuse, however, states that he no longer uses alcohol or drugs.

Tr. at 176.

An undated report from Center For Alcohol & Drug Services in Davenport, Iowa states that Plaintiff had three failed outpatient treatment experiences. "Each experience appears to include the following: Failure to follow through on agreements made, failure to appear for treatment and denial of a substance abuse problem." The report states that Plaintiff failed to report for a treatment scheduled to begin September 9, 1991. Tr. at 187.

On July 16, 1992, Parole/Probation Officer Randall G. Shafer wrote to Disability Determination Services that Plaintiff was paroled on July 18, 1991. During Mr. Shafer's supervision Plaintiff had "severe substance abuse problems, submitting urine samples positive for cocaine consumption ... [and] THC (marijuana)." As a result, Plaintiff was placed at the Newton Relapse Center in Newton, Iowa on September 27, 1991. He was terminated unsuccessfully from treatment on October 10, 1991 due to his non-compliance with the program. Thereafter, Plaintiff was returned to prison where he discharged his sentence. Tr. at 188.

Plaintiff was seen by D.K. Mokhtar, D.O., at the request of Disability Determination Services on June 26, 1992. Tr. at 198–93. Plaintiff, a 34–year–old man, presented with complaints of low back pain, right leg pain, and alcohol and drug abuse. Dr. Mokhtar wrote that Plaintiff's alcoholism and drug abuse history began in 1986 or 87 and included consuming one case of beer and a half pint of whiskey daily and smoking 2–3 marijuana joints daily and 2 gm of cocaine weekly. Tr. at 189. After a physical examination (Tr. at 190–91), Dr. Mokhtar opined:

> He should not lift in excess of 50 pounds infrequently, 15–25 pounds frequently with a period of rest in an eight hour shift. He should alternate every 1–2 hours with standing, walking and sitting in an eight hour shift. He has no difficulty with occasional stooping, climbing, kneeling and crawling. He has good dexterity and no problem with corrected vision, hearing, speaking and traveling. He should avoid excessive exposure to dust and extremely cold, damp climates due to history of chronic URI and back pain.

Tr. at 191.

An x-ray of Plaintiff's back on August 31, 1992, showed a large herniated disc process at the L5–S1 level. Tr. at 206. Plaintiff was seen at the neurosurgery clinic at the University of Iowa on April 22, 1993. Tr. at 417. Plaintiff underwent an L5–S1 hemidiscectomy on the right on July 16, 1993. The next day, he was able to walk without assistance. Sensory function was markedly improved and Plaintiff claimed that his lower back pain had improved tremendously. Plaintiff was discharged July 18, 1993 in good condition. Plaintiff was to lift objects no greater than 10 pounds for six weeks and was not to drive for two weeks. Tr. at 420.

On November 2, 1992, Plaintiff was seen for a psychiatric examination by D.V. Domingo, M.D., Tr. at 207–09. Dr. Domingo wrote:

> He states that he has a history of alcoholism. He continues to drink almost every day which he has been doing for many years. He states that drinking helps him sleep and helps the pain. He gets intoxicated frequently with alcohol. When he starts drinking he drinks until all the alcohol is consumed. He will drink as much as is available to him. He has had alcohol blackout spells frequently and has had arrests because of his drinking. He has been arrested, for example, for drinking and fighting and has been in prison a lot for drinking and stealing. He has had no DUI. He has a driver's license but has no car and does not drive. He has taken cocaine on and off and would take some today if available. He has taken other drugs. He has been to AA meetings in prison and in Davenport. There is a history of alcohol withdrawal delirium stating that he sees bugs and snakes sometimes and that they fall off the wall and drop on his bed. He has been hearing voices recently on and off when he wakes up from sleep. Then he can't go back to sleep. Sometimes he wakes up fighting and hostile and so his girlfriend did not want him to live with her anymore. He dreams sometimes that somebody is trying to get him and would wake up fighting.

Tr. at 207–08. After a mental status examination, Dr. Domingo's Axis I diagnosis was Alcohol dependence, continuous with history of alcohol withdrawal delirium. Tr. at 208. Dr. Domingo opined that Plaintiff was unable to work. Tr. at 209.

Judge Vanderhoof issued his decision September 21, 1993. Tr. at 231–43. Consistent with the regulations in effect at the time of his decision, Judge Vanderhoof ordered the benefits paid to a representative payee, and ordered Plaintiff to undergo approved treatment when available. Tr. at 236.

On November 16, 1995, Plaintiff was admitted to the Davenport Medical Center because he was having severe abdominal pain which started suddenly the day before. It was noted that Plaintiff admitted that he used alcohol and cocaine. Tr. at 250. Due to the extreme situation, A.P. Skora, D.O. felt exploratory laparotomy was indicated and Plaintiff was scheduled for the surgery. Tr. at 251. Plaintiff underwent the surgery on November 17, 1995. The report of surgery states that when the doctor entered the abdomen he immediately saw dead bowel and bloody drainage. Tr. at 252. The surgeon removed "the entire area of necrosis". Tr. at 253.

Two weeks later, on December 2, 1995, Plaintiff was readmitted to the hospital. He had been vomiting blood for the previous 18 hours. He also had been having loose green stools for several days and had not been eating well. Tr. at 289. A "Mallory–Weiss tear" explained Plaintiff bleeding. Diffuse mild gastroenteritis was also found. Discharge medications were Pepcid, Mylanta, and multivitamins. Tr. at 290. On admission, Plaintiff admitted to the use of illicit drugs including cocaine and cannabis, but he denied the use of amphetamines or alcohol since his surgery. Tr. at 291. Urine drug screen was positive for cocaine, amphetamines and THC, but otherwise negative. Tr. at 292. Hand written instructions dated November 24, 1995, under the letterhead of Davenport Medical Center, indicate that Plaintiff is to eat six to eight small meals per day and lie down for one hour after eating. The document, however, is unsigned although there is a business card indicating that it was written by registered dietician Dana Johnson. Tr. at 400.

On June 20, 1996, Plaintiff signed a Disability Report. Tr. at 322–27. Among the information provided on this form, Plaintiff was asked what his disabling condition is, to which he responded: "Drug, Alcoholism, can't read, write, add numbers, remember things...." Tr. at 322.

A hospital registration form dated December 12, 1996, states that Plaintiff was seen with an admitting diagnosis of "Abdominal pain R/O colon infarct." Tr. at 402. No records accompanied this form.

On June 30, 1997, James D. King, D.O. wrote to Plaintiff's attorney. Dr. King stated that he treated Plaintiff at the time of his small intestine surgery. As a result of the surgery, wrote Dr. King, it is necessary for Plaintiff to eat frequent small meals in order to maintain adequate calorie intake. Dr. King also stated that he had not seen Plaintiff since November 27, 1995. Tr. at 415.

Plaintiff appeared at an administrative hearing July 2, 1997. Plaintiff testified that after his small intestine was removed, he was instructed to eat several small meals each day after which he is to lie down to allow for digestion. He said that if he doesn't lie down, the food passes very quickly through his system and he is unable to absorb any nutrition. Plaintiff testified that the instructions were given to him by a dietitian who had relayed the information from Dr. King. Tr. at 61. Plaintiff testified that he weighs between 140 and 145 pounds (Tr. at 62) and is five feet, eleven inches tall. Tr. at 63. Plaintiff said that he spends his time sitting on the couch or ling in bed watching TV. Tr. at 64–65. Plaintiff testified that he stopped drinking and using drugs at some point after his intestinal surgery. Tr. at 66 & 69–70.

After Plaintiff testified, the ALJ called Roger Marquardt to testify as a vocational expert. Tr. at 71. The ALJ asked the following hypothetical question:

[I would] like to ask you a hypothetical question or two Mr. Marquardt. First one is age 39, male, education being a GED, past relevant work set forth in Exhibit 81 [Tr. at 416], ability to lift up to 25 pounds occasionally, up to ten pounds frequently, no limitation on sitting, standing up to one hour at a time with a total of six in an eight hour day, walking up to three blocks at a time, should have a job with a low stress level—I would say a three on a level of one to ten, ten being the highest, one being the lowest but I would define as a low stress level, should do simple one, two step routine jobs as the claimant has had problems with memory, should have a job which requires no contact with the general public including contact with fellow workers—based on this hypothetical would the claimant be able to do any past relevant work?

Tr. at 71–72. In response, the vocational expert testified that Plaintiff would not be able to do past work and would not have any transferable skills but that Plaintiff would be able to do several unskilled jobs such as microfilm processor, mail clerk, and retail stock checker. Thereafter the ALJ asked the vocational expert to consider the fact that the hypothetical person would miss more than three days per month "due to drug and alcohol addiction or any other cause." Tr. at 72. The vocational expert testified that there would be no work available for such a person. The vocational expert also testified that if a person needed to lie down for an hour after eating several small meals, work would not be possible. Tr. at 76.

In his decision, the ALJ found that Plaintiff suffers from severe impairments, although he did not specify which of Plaintiff's impairments were considered severe. The ALJ found that drug and alcohol dependence are a contributing factor to a determination of disability, and that Plain-tiff's testimony is not fully credible. The ALJ found that Plaintiff is unable to do his past relevant work but that he has a residual functional capacity consistent with the first hypothetical question to the vocational expert. Tr. at 23. The ALJ found that Plaintiff is able to jobs such as those cited by the vocational expert and that Plain-tiff's entitlement to benefits ended January 1, 1997. Tr. at 24.

## DISCUSSION

The scope of this Court's review is whether the decision of the Secretary in denying disability benefits is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g). *See Lorenzen v. Chater,* 71 F.3d 316, 318 (8th Cir.1995). Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support the conclusion. *Pickney v. Chater,* 96 F.3d 294, 296 (8th Cir. 1996). We must consider both evidence that supports the Secretary's decision and that which detracts from it, but the denial of benefits shall not be overturned merely because substantial evidence exists in the record to support a contrary decision. *Johnson v. Chater,* 87 F.3d 1015, 1017 (8th Cir.1996) (citations omitted). When evaluating contradictory evidence, if two inconsistent positions are possible and one represents the Secretary's findings, this Court must affirm. *Orrick v. Sullivan,* 966 F.2d 368, 371 (8th Cir.1992) (citation omitted). *Fenton v. Apfel,* 149 F.3d 907, 910–11 (8th Cir.1998).

In short, a reviewing court should neither consider a claim de novo, nor abdicate its function to carefully analyze the entire record. *Wilcutts v. Apfel,* 143 F.3d 1134, 1136–37 (8th Cir.1998) citing *Brinker v. Weinberger,* 522 F.2d 13, 16 (8th Cir.1975).

The regulations implementing the relevant portions of the Contract with America Advancement Act of 1996 and the Techni-

cal Amendments Relating to Drug Addicts and Alcoholics, Balanced Budget Act of 1997 are found at 20 C.F.R. § 416.935. *See Jackson v. Apfel,* 162 F.3d 533, 537 (8th Cir.1998). The regulation states that the key factor in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether the claimant would still be found disabled if the claimant stopped using drugs or alcohol. Subsection 2 states:

> (2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.

> . . . . .

> (ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

The issue in this case, therefore, is whether the ALJ's finding that "the claimant's drug and alcohol dependence is a contributing factor to this determination of disability" is supported by substantial evidence on the record as a whole, and whether that finding is consistent with the above cited regulation.

In this case, the ALJ did not specify which of Plaintiff's impairments he found to be severe. He simply found that "The medical evidence establishes that the claimant has severe impairments" which do not meet or equal a listed impairment. In the opinion of the Court, the evidence establishes three separate severe impairments: Alcoholism/drug addiction; a history of chronic low back pain status post L5–S1 partial hemilaminectomy with discectomy; and status post subtotal ileojejunectomy.

If Plaintiff's severe impairments, in addition to his well established alcoholism and drug addiction, were limited to his chronic low back pain, the ALJ's finding would be supported by substantial evidence on the record as a whole. The residual functional capacity finding is supported by the limitations placed on Plaintiff after his back surgery, and is bolstered by Plaintiff's lack of medical treatment.

The evidence, however, also establishes that Plaintiff underwent surgery for the removal of a large portion of his small intestine. Dr. King submitted a report in which he states that Plaintiff must eat frequent small meals. The registered dietician's instructions establish that Plaintiff must lie down for an hour after eating. Plaintiff testified that if he does not lie down after eating, the food passes very quickly through his system, making him ill and weak. The vocational expert testified that under such circumstances, competitive work is not possible. For all of these reasons, therefore, whether or not Plaintiff has stopped drinking and using drugs, as he testified, the loss of his small intestine renders him disabled. Therefore, drug addiction or alcoholism is not a contributing factor material to the determination of disability.

The Court is troubled that Plaintiff did not cooperate the Commissioner by attending the consultative medical examinations which were arranged for him. It is entirely possible that those physicians could have provided the evidence which would have persuaded the Commissioner to continue benefits at an earlier stage of these proceedings. Nor is the Court satisfied with Plaintiff's explanation of why he failed to avail himself of the opportunity to aid his own case. Nevertheless, the evidence in this record clearly establishes that the ALJ did not properly apply the regulations regarding alcoholism and drug addiction. The Commissioner argues that the fact that Plaintiff failed to attend the consultative examinations is reason, in and of itself, to affirm the denial of benefits. The ALJ,

however, did not invoke 20 C.F.R. § 404.918 as a basis to deny benefits. Rather, the ALJ stated that the fact that Plaintiff's "failure to show up at the scheduled appointments leaves one with no other conclusion than that he is still abusing drugs and alcohol." Tr. at 21. As explained above, however, the test is not whether or not Plaintiff continues to abuse drugs and/or alcohol. The test is whether or not that abuse is a contributing factor material to the determination of disability.

## CONCLUSION AND DECISION

It is the holding of this Court that ALJ's finding that alcoholism and drug addiction is a contributing factor to the determination of disability is not supported by substantial evidence in the record when viewed as a whole. The Court finds that the evidence in this record is transparently one sided against the Commissioner's decision. *See Bradley v. Bowen,* 660 F.Supp. 276, 279 (W.D. Ark.1987). The evidence in this record does not establish that Plaintiff has the ability to return to past relevant work or to any other type of work that exists in significant numbers in the national economy. A remand to take additional evidence would only delay the receipt of benefits to which Plaintiff is clearly entitled. Therefore, Plaintiff is entitled to a continuation of his disability benefits.

Defendant's motion to affirm the Commissioner is denied. This cause is remanded to the Commissioner for computation and payment of benefits which may be due. The judgment to be entered will trigger the running of the time in which to file an application for attorney's fees under 28 U.S.C. § 2412(d)(1)(B) (Equal Access to Justice Act). *See Shalala v. Schaefer,* 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993).