**Dennis C. STRONG, Plaintiff,**

v.

**Kenneth S. APFEL, Commissioner of Social Security, Defendant.**

No. 1–00–CV–90006.

United States District Court, S.D. Iowa.

Nov. 29, 2000.

Dennis C. Strong, pro se.

William C. Purdy, Asst. U.S. Atty., Des Moines, IA, for Defendant.

### ORDER

PRATT, District Judge.

Plaintiff, Dennis C. Strong, filed a Complaint in this Court on February 1, 2000, seeking review of the Commissioner's decision to deny his claim for Social Security benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.* This Court may review a final decision by the Commissioner. 42 U.S.C. § 405(g). For the reasons set out herein, the decision of the Commissioner is reversed.

### BACKGROUND

Plaintiff filed his application for benefits on August 4, 1997. Tr. at 90–95. After the application was denied initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge. A hearing was held before Administrative Law Judge Emily Cameron Shattil (ALJ) on April 29, 1998. Tr. at 29–55. The ALJ issued a Notice of Decision—Unfavorable July 11, 1998. Tr. at 8–28. The ALJ's decision was affirmed by the Appeals Council of the Social Security Administration on December 3, 1999. Tr. at 6–8. Plaintiff filed his Complaint in this Court on February 1, 2000.

### MEDICAL EVIDENCE

In 1992 and 1993, Plaintiff was treated for chronic alcoholism at Jennie Edmundson Hospital in Council Bluffs, Iowa. Tr. at 133–67. During this time, Plaintiff was also treated for ·emphysema, grand mal seizures, major depression, congestive heart failure, and liver cirrhosis. In December, 1992, Plaintiff was seen for physical therapy because of difficulty walking due to the congestive heart failure and chronic obstructive pulmonary disease (COPD). On December 11, 1992, H. Rassekh, M.D., a doctor at Jennie Edmundson, wrote:

> History reveals the patient has been treated at Eppley in Omaha for chemical dependency eight years ago when he was forced by the postal office where he was working as a mail carrier. He was in the hospital for about five weeks following which he did not follow through and eventually was fired from his job and has not worked since the early 1980s and is a recipient of some·sort of assistance from the government. He further tells me he resides in Logan by himself and readily admits that about 11 a.m. he starts with his drinking buddy to drink and sometimes loses track of numbers but feels that usually it is between 12 and 18 cans of beer. He denies categorically any seizure disorder before although the sister told me he has been having problems with thinking and occasionally blacking out. He further tells me he really wants to go home and wants to know the score, is it possible for him to sign an agreement to be evaluated as an outpatient. He shows very little interest in stopping drinking or thinks that the drinking is a problem. On mental examination the patient appears to be non-psychotic. Speech is somewhat slurred, however, one has to understand the patient has been on numerous medications including librium as well as Valium and Dilantin, etc., for control of his seizures.

> It is my overall impression that we are dealing with a serious acute and chronic alcoholism with numerous complications. At this time the patient's liver function tests appear to show some liver involvement which Dr. Altman, his attending physician, is taking care of. From a

neurological standpoint the patient will remain on Dilantin. It is my opinion the Dilantin is not affecting his thinking process to present himself to the court. Consequently with chemical dependency assessment which has been done by Ms. Zenns and my own personal assessment and history obtained by the sister, it is my opinion the patient is definitely a substance abuser and has no insight into the serious problem of alcoholism. He is potentially dangerous to himself and in my opinion he meets clinical criteria for being committed for treatment of acute and chronic alcoholism and abstinence is very important in his situation because of involvement of his liver and seizure disorder.

Tr. at 159–60.

Office notes from R. Altman, M.D., Plaintiff's treating physician, between August 31, 1993 and September 7, 1995, show that although Plaintiff, at some point, stopped drinking, he continued to smoke between one and two packs of cigarettes a day. Tr. at 169–76.

On September 10, 1997, Plaintiff was seen for a physical examination by George L. Pratt, D.O. Tr. at 177–97. Plaintiff told Dr. Pratt that he had experienced no problems with liver cirrhosis for the previous five years and that he did not want that listed as a cause of disability. Plaintiff also denied any alcohol use in the previous five years. Plaintiff said that after walking two blocks, he becomes short of breath. Tr. at 177. On physical examination, Plaintiff's liver was not enlarged or tender. After the physical examination, Dr. Pratt's impression was that Plaintiff has emphysema "primarily by history of smoking." Dr. Pratt also diagnosed continued tobacco abuse as well as a history of alcohol abuse, a history of a head injury as a child and a history of liver poisoning. Tr. at 178. Dr. Pratt concluded his report: "It appears from this examination, the patient's ability to perform income producing/work-related activities is not significantly impaired." Tr. at 179.

## ADMINISTRATIVE HEARING

At the administrative hearing on April 29, 1998, Plaintiff told the ALJ that he felt that he was disabled because of emphysema. He said that because of his breathing problems, "I can't hardly walk more than a block anywhere, and I can't stand for more than five or ten minutes at any place or time." Plaintiff said that he can lift 15 or 20 pounds. He testified that he has circulation problems in his feet and legs for which he applies ice to his feet at night. Tr. at 41. Later in the hearing, Plaintiff told the ALJ that he felt that he could stand two hours at a time if he could move around and if he could sit down for two minutes after an hour. Tr. at 43. Plaintiff told the ALJ that he had not had anything to drink since November 29, 1992. Tr. at 48.

After Plaintiff and his sister testified, the ALJ called Gail Leonhardt to testify as a vocational expert. Tr. at 50. The ALJ asked the following hypothetical:

We will assume, for purposes of the following hypotheticals, that the claimant was 52 years of age at onset, has educational abilities commenced with a twelfth grade education and three semesters at Dana College, and his past work was as a mail carrier. Now, if I find first, that he can lift 20 pounds occasionally, 10 pounds frequently, sit, stand, and walk six out of the eight hours, occasionally climb, stoop, kneel, crouch, crawl. Avoid concentrated exposure to fumes, odors, dust, gases. Can he do his past relevant work as a mail carrier?

In response, the vocational expert testified that Plaintiff would not be able to do his past work. The vocational expert also said that although Plaintiff has exhibited some worker traits such as the ability to read detailed information, that he does not have transferable skills. Tr. at 51. When asked about unskilled work, the vocational

expert pointed to assembly jobs [1], cashier jobs [2] and telephone solicitor jobs [3]. Tr. at 53–54. The vocational expert testified that the jobs would not be reduced if the occasional lifting limitation were changed to 15 pounds. Tr. at 53.

## ALJ'S DECISION

In her decision, the ALJ, following the familiar five step sequential evaluation, found that Plaintiff has not engaged in substantial gainful activity since the alleged onset of disability. The ALJ found that Plaintiff's severe impairments include emphysema, obesity, major depressive episode, and history of alcohol abuse (in remission). The ALJ found that Plaintiff's impairments, alone or in combination, do not meet or equal an impairment listed in Appendix 1, Subpart P of the Social Security Regulations Number 4. The ALJ found that Plaintiff is unable to do his past relevant work, but that he has the residual functional capacity of:

> No frequent lifting/carrying of objects weighing in excess of 5 pounds; more than the occasional lifting/carrying of objects weighing 15 pounds; sitting more than one hour at a time; more than occasional climbing, balancing, stooping and/or crouching; and/or concentrated exposure to fumes, dust, gases and/or odors. Furthermore, the Claimant must be allowed to alternate sitting and standing throughout an 8 hour day by sitting down for a few minutes every hour after a period of standing.

The ALJ found that Plaintiff is able to perform "other work which exists in the regional and national economies in significant numbers", and is, therefore, not disabled. Tr. at 22–23.

## DISCUSSION

The scope of this Court's review is whether the decision of the Secretary in denying disability benefits is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g). *See Lorenzen v. Chater,* 71 F.3d 316, 318 (8th Cir.1995). Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support the conclusion. *Pickney v. Chater,* 96 F.3d 294, 296 (8th Cir.1996). We must consider both evidence that supports the Secretary's decision and that which detracts from it, but the denial of benefits shall not be overturned merely because substantial evidence exists in the record to support a contrary decision. *Johnson v. Chater,* 87 F.3d 1015, 1017 (8th Cir.1996) (citations omitted). When evaluating contradictory evidence, if two inconsistent positions are possible and one represents the Secretary's findings, this Court must affirm. *Orrick v. Sullivan,* 966 F.2d 368, 371 (8th Cir.1992) (citation omitted). *Fenton v. Apfel,* 149 F.3d 907, 910–11 (8th Cir.1998).

In *Lowe v. Apfel,* 226 F.3d 969, 971 (8th Cir.2000), the Court wrote: "When considering whether the ALJ properly denied social security benefits, we determine whether the decision is based on legal error, and whether the findings of fact are

---

1. The vocational expert did not specify which of the 604 assembly jobs listed in the Dictionary of Occupational Titles to which she was referring, but 706.684–022 ASSEMBLER, SMALL PRODUCTS I is an unskilled light job. It is most helpful to the Court when it is reviewing the record of Social Security proceedings if the vocational expert is asked to specify the Dictionary of Occupational Titles code numbers for the jobs identified.

2. The Dictionary of Occupational Titles lists 211.462–010 CASHIER II as an unskilled light occupation. Cashier II includes the job of a self service gas station attendant to which the vocational expert pointed. Tr. at 53.

3. According to the Dictionary of Occupational titles, 299.357–014 TELEPHONE SOLICITOR is a semi-skilled sedentary job. The ALJ specifically told the vocational expert that she did not want citations to sedentary work (Tr. at 53), and the vocational expert testified that Plaintiff did not have transferable skills. The job of telephone solicitor, therefore, must be eliminated from the list of jobs Plaintiff is able to do under the parameters of the hypothetical.

supported by substantial evidence in the record as a whole."

■ In short, a reviewing court should neither consider a claim de novo, nor abdicate its function to carefully analyze the entire record. *Wilcutts v. Apfel,* 143 F.3d 1134, 1136–37 (8th Cir.1998) citing *Brinker v. Weinberger,* 522 F.2d 13, 16 (8th Cir. 1975).

The ALJ found that Plaintiff is unable to return to his past work. The burden of proof, therefore, was shifted from Plaintiff to the Commissioner to prove with medical evidence that Plaintiff has a residual functional capacity to do other kinds of work, and that other work exists in significant numbers that Plaintiff can perform. *Nevland v. Apfel,* 204 F.3d 853, 857 (8th Cir. 2000) citing *McCoy v. Schweiker,* 683 F.2d 1138, 1146–47 (8th Cir.1982) (en banc), and *O'Leary v. Schweiker,* 710 F.2d 1334, 1338 (8th Cir.1983). *See also Cunningham v. Apfel,* 222 F.3d 496, 501 (8th Cir.2000), citing *Nevland.*

In the case at bar, the ALJ found that Plaintiff has the residual functional capacity to lift a maximum of fifteen pounds and to frequently lift five pounds. The ALJ also found that Plaintiff must be allowed to sit for a few minutes every hour after a period of standing. Although the medical evidence supporting this finding is somewhat sketchy, the finding is unchallenged by Plaintiff who appears pro se and who did not file a brief, and the Commissioner argues that the finding is supported by the evidence in the record. The Court, therefore, accepts the ALJ's residual functional capacity finding and holds that it is supported by substantial evidence on the record as a whole.

In addition to proving that Plaintiff has a residual functional capacity, the Commissioner must also prove that jobs exist in significant numbers that Plaintiff is able to do in his impaired condition. In *McCoy* 683 F.2d at 1148, the Court wrote that where an individual has a combination of exertional and nonexertional limitations, the medical vocational guidelines are first considered to determine if a finding of disability is appropriate based on exertional limitations alone. If a finding of disability is not directed, then vocational expert testimony is required to determine how much the person's work capability is further diminished by nonexertional impairments. The Court, therefore, will first look to the medical vocational guidelines to determine if Plaintiff is entitled to a finding of disabled based on those rules, before determining if further vocational expert testimony is necessary.

■ The problem facing the Court is that the residual functional capacity that was found by the ALJ is not the same as that presented to the vocational expert in the hypothetical question. Since the Court has already held that the ALJ's finding is supported by substantial evidence, the hypothetical must be considered flawed. The testimony of the vocational expert who responded to the hypothetical, therefore, is not substantial evidence which supports the ALJ's decision. *Cox v. Apfel,* 160 F.3d 1203, 1207 (8th Cir.1998) (vocational expert testimony in response to a defective hypothetical cannot constitute substantial evidence to support a conclusion of no disability).

■ Furthermore, the residual functional capacity is neither light nor sedentary. Light work requires lifting a maximum of 20 pounds, with frequent lifting of 10 pounds. Sedentary work requires lifting a maximum of 10 pounds and frequently lifting lighter objects such as docket files, ledgers and small tools. 20 C.F.R. §§ 404.1567(a) & (b) and 416.967(a) & (b). Here, the maximum lifting is fifteen pounds, more than sedentary, but less than light. The frequent lifting found by the ALJ is only five pounds which is compatible with sedentary but only half as much as required by light work. The ALJ also found that Plaintiff needs to alternate between sitting and standing. Whether Plaintiff is limited to sedentary or light work is an important question because, as

will be shown below, if Plaintiff can only do sedentary work, he is entitled to a finding of disability based on the medical vocational guidelines.

The Commissioner published Social Security Ruling 83–12 (SSR 83–12) for clarifying how to apply the medical vocational guidelines when an individual's residual functional capacity does not coincide with any one of the defined exertional ranges of work. The Ruling states that if a residual functional capacity falls between two rules that direct opposite conclusions, it must be determined whether or not the capacity for the higher exertional capacity is significantly reduced in terms of the regulatory definition. "[I]f the exertional capacity is significantly reduced in terms of the regulatory definition, it could indicate little more than the occupational base for the lower rule and could justify a finding of 'Disabled.'" In *Carter v. Sullivan*, 909 F.2d 1201, 1202 (8th Cir.1990), the Court, citing 20 C.F.R. § 404.408, stated that Social Security Rulings are binding on all components of the Administration. The Court also held that an agency's failure to follow its own binding regulations is a reversible abuse of discretion.

At the hearing, the vocational expert testified that if Plaintiff were limited to lifting a maximum of either fifteen or twenty pounds, and frequently lifting ten pounds, there would be light work available even if Plaintiff needed to alternate between sitting and standing. In her decision, however, the ALJ found that Plaintiff is limited to lifting a maximum of fifteen pounds and frequently lifting only five pounds. While the hypothetical may well have been comparable to the ability to do light work, the ALJ's finding is more compatible with the lifting requirements of sedentary work.

SSR 83–12 also speaks to the situation of an individual who must alternate periods of sitting and standing. The ruling explains that professional or managerial jobs allow a person to sit or stand with a degree of choice. Unskilled jobs, on the other hand, "are particularly structured so that a person cannot ordinarily sit or stand at will." SSR 83–12 states:

> In some disability claims, the medical facts lead to an assessment of RFC which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing. The individual may be able to sit for a time, but must then get up and stand or walk for awhile before returning to sitting. Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking contemplated for most light work. (Persons who can adjust to any need to vary sitting and standing by doing so at breaks, lunch periods, etc., would still be able to perform a defined range of work.)

In the opinion of the Court, given her findings regarding Plaintiff's residual functional capacity, the ALJ should have looked to medical vocational guidelines rule 201.14 which directs a finding of disabled for a person who cannot return to past relevant work, who is limited to sedentary work, who is closely approaching advanced age, with a high school education, and who does not possess transferable skills. Given the restrictions of the ALJ's residual functional capacity finding and the guidance of SSR 83–12, it is simply not possible to find that Plaintiff is able to do light work. The vocational expert responded to a hypothetical which is materially different than the ALJ's finding. The testimony, therefore, is not substantial evidence which supports the ALJ's decision. However, because Plaintiff is entitled to a finding of disability based on the medical vocational guidelines, a remand for further vocational expert testimony is not necessary.

## CONCLUSION

It is the holding of this Court that Commissioner's decision is not supported by substantial evidence on the record as a whole. The Court finds that the evidence in this record is transparently one sided against the Commissioner's decision. *See Bradley v. Bowen,* 660 F.Supp. 276, 279 (W.D. Ark.1987). At the time of the administrative hearing, Plaintiff was 52 years old and limited to sedentary unskilled work. Medical vocational guideline rule 201.14 directs a finding of disability. A remand to take additional evidence would only delay the receipt of benefits to which Plaintiff is entitled.

Defendant's motion to affirm the Commissioner's final decision is denied. **This cause is remanded to the Commissioner for computation and payment of benefits.**

IT IS SO ORDERED.